# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOANNE BLUE,**<br>1001 F Street, NW<br>Washington, DC  20002,<br><br>**EDNA ROBINSON,**<br>1001 F Street, NW<br>Washington, DC  20002,<br><br>**HALBERT T. BLUE,**<br>1001 F Street, NW<br>Washington, DC  20002,<br><br>**ROSE BLUE,**<br>1001 F Street, NW<br>Washington, DC  20002,<br><br>     Plaintiffs,<br><br>     v.<br><br>**FREMONT INVESTMENT & LOAN,**<br>2727 E. Imperial Highway<br>Brea, California<br><br>**EXECUTIVE TITLE & ESCROW**<br>9500 Arena Drive, #480<br>Largo, Maryland  20774<br><br>**TOWN AND COUNTRY MORTGAGE**<br>**AND FINANCIAL SERVICES, INC.**<br>1300 Mercantile Lane, Suite 150<br>Largo, Maryland  20776<br><br>**DENNIS BISHOP**<br>1300 Mercantile Lane, Suite 150<br>Largo, Maryland  20776 | Case No. _____ |

**BRENDA CAREW,**       )
**10423 Beacon Ridge Drive**     )
**Mitchellville, Maryland 20721,**   )
                         )
     **Defendants.**        )
_____)

## NOTICE OF REMOVAL

Defendant Fremont Investment & Loan ("Fremont"), by and through its undersigned counsel, and pursuant to 28 U.S.C. §§ 1441 and 1446, hereby notices the removal of Superior Court for the District of Columbia Case Number 2008 CA 002679 B to the United States District Court for the District of Columbia. In support hereof, Fremont states as follows:

1.      Fremont Investment & Loan is a wholly owned bank subsidiary of Fremont General Corporation, a California corporation whose principal office is located at 2727 E. Imperial Highway, Brea, California.

2.      Based upon the allegations in the Complaint, it appears that defendants Executive Title & Escrow is a Maryland limited liability company and Town and Country Mortgage and Financial Services, Inc. is a Maryland corporation; both are alleged to conduct business in Maryland. The individual defendants are Maryland residents.

3.      Upon information and belief grounded in the Complaint, Plaintiffs are citizens and residents of the District of Columbia.

4.      The above-entitled action was commenced in the Superior Court for the District of Columbia by the filing of a Complaint in such court. Service of process of the Complaint upon Fremont's registered agent was made on April 8, 2008. This Notice of Removal is filed within thirty (30) days after the receipt by Defendant Fremont, through service or otherwise, of a Summons and the Complaint.

2

5.    In the Complaint, the plaintiffs allege that the Defendants are liable to them in connection with a home loan. Plaintiffs seek compensatory damages, rescission of the loan, statutory damages, and other relief. Based upon the amounts of the loan challenged by Plaintiffs in the Complaint, which is in the amount of $444,000, the amount in controversy likely exceeds $75,000.

6.    Counts Four through Six allege violations of the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* Because Plaintiff seeks relief by way of a federal statute, this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

7.    The remaining counts assert claims arising under District of Columbia law based upon the same facts and circumstances. Fremont asks that the Court exercise supplemental jurisdiction over those counts pursuant to 28 U.S.C. § 1367.

8.    Based upon the allegations in the Complaint, it appears that the United States District Court for the District of Columbia may also have jurisdiction of this action, under 28 U.S.C. § 1332, by virtue of the diversity of the parties to this action and because the amount in controversy exceeds $75,000.

9.    Copies of all process, pleadings and orders served upon Fremont are attached as Exhibit A.

3

Wherefore Fremont Investment & Loan asks that this action proceed in the United States District Court for the District of Columbia in accordance with 28 U.S.C. §§ 1441 and 1446.

Respectfully submitted,

Harold G. Belkowitz (D.C. Bar No. 449800)
Ober, Kaler, Grimes & Shriver
A Professional Corporation
1401 H Street, N.W., Suite 500
Washington, D.C.  20005-2110
(202) 408-8400
(202) 408-0640 facsimile

Counsel for Fremont Investment & Loan

4

<u>Certificate of Service</u>

I certify that a copy of the foregoing was sent by first-class mail, postage pre-paid, this
28th day of April, 2008 to:

William C. Johnson, Jr., Esquire
1229 15th Street, N.W.
Washington, DC 20005
Counsel for Plaintiffs

Executive Title & Escrow
9500 Arena Drive, #480
Largo, Maryland 20774

Town and Country Mortgage and Financial Services, Inc.
1300 Mercantile Lane, Suite 150
Largo, Maryland 20776

Dennis Bishop
1300 Mercantile Lane, Suite 150
Largo, Maryland 20776

Brenda Carew
10423 Beacon Ridge Drive
Mitchellville, Maryland 20721

Harold G. Belkowitz

152224

5

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Joanne Blue, et al. | Fremont Investment & Loan, et al. |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF<br>(EXCEPT IN U.S. PLAINTIFF CASES)  ____D.C.____ | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  ____California____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)<br><br>William C. Johnson, Jr., Esquire<br>1229 15th Street, N.W.<br>Washington, DC  20005 | ATTORNEYS (IF KNOWN)<br><br>Harold G. Belkowitz<br>Ober, Kaler, Grimes & Shriver<br>1401 H Street, N.W., Suite 500<br>Washington, DC  20005 |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government
Plaintiff

◉ 3 Federal Question
(U.S. Government Not a Party)

○ 2 U.S. Government
Defendant

○ 4 Diversity
(Indicate Citizenship of
Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◉ 1 | ○ 1 | Incorporated or Principal Place<br>of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place<br>of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a<br>Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ○ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If<br>   Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. *General Civil (Other)* | OR | ○ F. *Pro Se General Civil* |
|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☒ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or<br>   defendant<br>☐ 871 IRS-Third Party 26<br>   USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure<br>   of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational<br>   Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC<br>   Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced &<br>   Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/<br>   Exchange<br>☐ 875 Customer Challenge 12 USC<br>   3410<br>☐ 900 Appeal of fee determination<br>   under equal access to Justice<br>☐ 950 Constitutionality of State<br>   Statutes<br>☐ 890 Other Statutory Actions (if<br>   not administrative agency<br>   review or Privacy Act |

| O  **G.  Habeas Corpus/ 2255** | O  **H.  Employment Discrimination** | O  **I.  FOIA/PRIVACY ACT** | O  **J.  Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| O  **K.  Labor/ERISA (non-employment)** | O  **L.  Other Civil Rights (non-employment)** | O  **M.  Contract** | O  **N.  Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V.  ORIGIN**

O 1 Original    O 2 Removed    O 3 Remanded from    O 4 Reinstated    O 5 Transferred from    O 6 Multi district    O 7 Appeal to
  Proceeding      from State      Appellate Court      or Reopened      another district      Litigation      District Judge
               Court                         (specify)             from Mag. Judge

**VI.  CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
28 US 1331,1441&1446. Removal due to causes of action based upon the Truth in Lending Act (15 USC 1601 et seq) and RESPA (12 USC 2601 et seq.)

| **VII.  REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** unstated damages and rescission | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☐   NO ☐ |

**VIII.  RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☐    If yes, please complete related case form.

DATE  April 28, 2008    SIGNATURE OF ATTORNEY OF RECORD  *Harold H. Belbour*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## OFFICE OF THE JUDGE IN CHAMBERS

TO: *Fremont Investment + Loan*          CASE NO.: *08 CA 2679*

### NOTICE OF HEARING

You are hereby notified that there will be a hearing on Plaintiff's request for

a Temporary Restraining Order (T.R.O.) against you, on

_____*4/9/08*_____ , at _____*10:00*_____ *(a.m.)* ~~p.m.~~ at
　　*(date)*　　　　　　　　*(time)*

D.C. SUPERIOR COURT, 500 Indiana Avenue, N.W., Room 4220, 4th floor.

If you wish to be heard, your presence is required.

WHITE - DEFENDANT          CANARY - PLAINTIFF          PINK - COURT FILE

FORM SO-2064/Jul. 98



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

JOANNE BLUE
    Vs.                              C.A. No.     2008 CA 002679 B

FREEMONT INVESTMONT & LOAN

## INITIAL ORDER AND ADDENDUM

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge BRIAN F HOLEMAN
Date:  April 4, 2008
Initial Conference: 9:30 am, Friday, July 18, 2008
Location:  Courtroom A-49
             515 5th Street NW
             WASHINGTON, DC 20001

Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement. The early mediation schedule shall be included in the Scheduling Order following the ISSC. Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator. Information about the early mediation date also is available over the internet at https://www:dccourts.gov/pa/. To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC. Two separate Early Mediation Forms are available. Both forms may be obtained at www.dccourts.gov/medmalmediation. One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator. Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 105, 515 5th Street, N.W. (enter at Police Memorial Plaza entrance). Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov. *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles. All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a). If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826. Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office. The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Rufus G. King, III

Caio.doc

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

---

Joanne Blue, et. al.

*Plaintiff*

vs.

Fremont Investment & Loan, Inc.
*Defendant*

**0002679-08**

Civil Action No. _____

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

William C. Johnson, Jr., Esq.
Name of Plaintiff's Attorney

1229 15th St. NW                              By _____
Address                                                                    Deputy Clerk
Washington, D.C. 20005

(202) 483-0808                               Date _____
Telephone

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

CV(6)-456/May 03

**IMPORTANT:** IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

Joanne Blue )
1001 F Street, NE )
Washington, D.C. 20002 )
      Plaintiff, )
Edna Robinson )
1001 F Street, NE )
Washington, D.C. 20002 )
      Plaintiff, )
Halbert T. Blue )
1001 F Street, NE )
Washington, D.C. 20002 )
      Plaintiff, )
Rose Blue )
1001 F Street, NE )
Washington, D.C. 20002 )
      Plaintiff, )
 )
 )
     v. )
 )
Fremont Investment & Loan, Inc. )
2727 E. Imperial Highway )
Brea, California 92821 )
      Defendant, )
 )
Executive Title & Escrow )
9500 Arena Drive #480 )
Largo, Maryland 20774 )
      Defendant, )
 )
Town and Country Mortgage and Financial )
Services, Inc. )
1300 Mercantile Lane )
Suite 150 )
Largo, Maryland 20776 )
      Defendant, )
 )
Dennis Bishop )
1300 Mercantile Lane )
Suite 150 )
Largo, Maryland 20776 )
      Defendant, )
 )

RECEIVED
Civil Clerk's Office
APR 0 4 2008
Superior Court of the
District of Columbia
Washington, D.C.

0002679-08

CA No.:

**DEMAND FOR JURY TRIAL**

Brenda Carew                    )
10423 Beacon Ridge Drive     )
Mitchellville, Maryland 20721    )
          Defendant,         )
                              )

## COMPLAINT

**COMES NOW** the plaintiffs, Joanne Blue, Edna Robinson, Halbert Blue and Rose Blue, by and through counsel, William C. Johnson, Jr., Esq. and complains against the defendants for the purposes stated as follows:

1.    This Complaint is filed and these proceedings are instituted under the D. C. Consumer Protection Act, DC Code § 28-2904, et. seq., D.C. Mortgage Lender and Broker Act, DC Code § 26-1101 et. seq., Home Ownership and Equity Protection Act of 1994 (hereinafter "HOEPA"), Subt. B of Title 1, §§ 151-158 (H.R. 3474) Pub. L. No. 103-325, 108 Stat. 2160 (Sept. 23, 1994), and the Truth-in-Lending Act, 15 U.S.C. § 1640(a) to enforce plaintiff's rights against mortgage fraud and to rescind a purported consumer credit transaction, to void the defendants deed of trust in plaintiff's home, and to recover actual and statutory damages, trebled damages, reasonable attorney's fees and costs by reason of the defendants violations of the Act and any regulations thereto, and by reason of mortgage fraud committed on plaintiff during the purported transaction.

## JURISDICTION

2.    This Court has subject matter jurisdiction over this action pursuant to D.C. Code 11-921(1981 Edition) as this Complaint arises from an incident which occurred primarily in the District of Columbia.

3.    This Court has personal jurisdiction over the Defendants in that Defendants committed mortgage fraud in Washington, D.C. by an act or omission.

## VENUE

4.    Venue is proper in this Court because a substantial portion of the transaction complained of herein occurred in the District of Columbia, the incident at issue is whether the defendants fraudulently procured a mortgage upon a

property located in Washington, D.C.  The defendants have a principle place of business in the State of Maryland but conducts within the District of Columbia.

## PARTIES

5.    Plaintiff Joanne Blue ("Ms. Blue") is a natural person and resides at 1001 F Street, NE, Washington, D.C. 20002.

6.    Plaintiff Edna Robinson ("Ms. Robinson") is a natural person and resides at 1001 F Street, NE, Washington, D.C. 20002.

7.    Plaintiff Halbert Blue ("Mr. Blue") is a natural person and resides at 1001 F Street, NE, Washington, D.C. 20002.

8.    Plaintiff Rose Blue ("Mrs. Blue") is a natural person and resides at 1001 F Street, NE, Washington, D.C. 20002.

9.    Defendant Fremont Investment & Loan, is a mortgage lender in the state of California Maryland and presently is not authorized to do business in the District of Columbia.

10.    At all times relevant hereto, in the ordinary course of its business, Defendant Fremont Investment & Loan regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, making Defendant Fremont Investment & Loan a creditor.

11.    Defendant Town and Country Mortgage and Financial Services, Inc, is a Maryland business engaged in Mortgage Brokering Services at, among other locations, 1300 Mercantile Lane Largo, Maryland 20774.

12.    Defendant Denis Bishop is the CEO and President of Town and Country Mortgage and Financial Services, Inc, and operates among other locations, at 1300 Mercantile Lane Largo, Maryland 20774.

13.    Defendant Brenda Carew is a consultant and broker of Town and Country Mortgage and Financial Services, Inc, and operates among other locations, at 1300 Mercantile Lane Largo, Maryland 20774.

14.    Defendant Executive Title & Escrow, LLC is a title company and operates among other locations, at 9500 Arena Drive, Suite 480, Largo, MD 20774.

## INTRODUCTION

15.    On or about April 2004, plaintiff Halbert and Rose Blue, an elderly couple and their daughters were being foreclosed upon by their lender. The plaintiffs were approached by Defendant Town & Country Mortgage through Denis Bishop and he offered to loan them the money to stop the foreclosure and required them to sign a deed to "secure" his loan.

16.    The plaintiffs were informed by defendant Denis Bishop that they could stay in their home as long as they continued to pay the mortgage. The plaintiffs agreed in an effort to stop the foreclosure.

17.    Unbeknownst to the plaintiff, a deed purporting to sell their property to a "Brenda Carew," was filed with the register of deeds. **Brenda Carew was unknown to the plaintiffs.**

18.    Defendant Brenda Carew, utilizing defendant Town & Country" as the mortgage broker, obtained a loan from New Century Mortgage in the amount of $387,000.00 to purchase the property. The purported sales price was $430,000.00. The HUD-1 indicates the existence of a $43,000.00 deposit.

19.    Brenda Carew used the proceeds of the loan to payoff the existing mortgage/fees alleged to be $308,000.00 and retained the overage. The plaintiffs were never aware of the "actual" sale of the property and continued to live in the home. The plaintiffs admit to receiving cash in the amount of $8,000.00.

20.    On or about September 1, 2005, the property was facing foreclosure again. This time however, the loan was in the name of "Brenda Carew." Defendant Brenda Carew received notices of the foreclosure at the home of the plaintiff. The plaintiff's were informed by Denis Bishop that they would be given a loan to refinance their home so they could stop the foreclosure. The plaintiffs never applied for a loan.

21.    The plaintiffs did not receive an appraisal of their home, however they did receive a notice claiming that if they wanted to receive an appraisal they had to request one from the home office in California.

22.    The sale of the property was from Brenda Carew to the plaintiff in the amount of $555,000.00.  The plaintiff Joane Blue and Edna Robinson received an unsolicited loan from Fremont Investment & Loans in the amount of $444,000.00.  Once again, there is a fictitious deposit.  This time the deposit is in the amount of $55,500.00.

23.    There is also a second mortgage held by defendant Brenda Carew in the amount of $55,500.00.  This time, the plaintiffs received nothing at the table.

24.    The plaintiffs did not apply for the loan nor could they qualify for the loan. Defendant Denis Bishop arranged for the loan without the plaintiff's knowledge.

25.    The plaintiffs nonetheless, attended the closing because they were told this would stop the foreclosure.

26.    The plaintiffs Halbert and Rose Blue were left completely out of the transaction and ultimately had their property taken from them.

27.    The plaintiffs Joanne Blue and Edna Rose ended up with a mortgage note which exceeded their means to pay.  Defendant Fremont is foreclosing upon the loan.

## STATEMENT OF FACTS PERTAINING TO DISCLOSURES AND TERMS OF THE TRANSACTION

28.    The above mentioned credit transaction was a high rate mortgage within the meaning of HOEPA, 15 U.S.C. § 1602 (aa)(1)(B), in that the total "points and fees" as defined in that section that defendant Fremont and defendant Town and Country, charged Plaintiffs exceeded eight percent (8%) of the total loan amount.

29.    The above mentioned credit transaction was a high rate mortgage within the meaning of HOEPA, 15 U.S.C. § 1602 (aa)(1)(B), in that the annual percentage rate at consummation of the transaction exceeded by more than ten (10 percentage points the yield on Treasury securities having comparable periods of maturity on the 15th day of the month immediately preceding the month in which defendant Fremont and defendant Town and Country received plaintiff's application.

37. On March 4, 2008, plaintiff rescinded the transaction by sending a notice of rescission, a true copy of which is attached hereto as Exhibit 1, to Fremont Investment & Loan 2727 E. Imperial Highway, Brea, California 92821.

38. Defendant Fremont and defendant Town and Country received the notice via first class mail.

39. More than twenty days have passed since plaintiff rescinded the transaction and defendant has failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction, as required by 15 U.S.C. § 1635(b) and Regulation Z § 226.23(d)(2). In addition, defendant has failed to return to the plaintiff any money or property given by the plaintiff to anyone, including defendant, as required by 15 U.S.C. § 1635(b) Regulation Z § 226.23(d)(2).

### FIRST CAUSE OF ACTION
### *Civil Conspiracy by all Defendants*

40. Plaintiffs incorporates all paragraphs and statements in this complaint and alleges the following;

41. Defendants, without the consent or approval of the plaintiffs, applied for a mortgage loan for the purchase of the subject property located at 1001 F St. NE, Washington, D.C. 20002.

42. Defendants, without the consent or approval of the plaintiffs, transferred the property located at 1001 F St. NE, Washington, D.C. 20002 to defendant Brenda Carew.

43. Defendants without the consent or approval of the plaintiffs, arranged for the financing and purchase of the property located at1001 F St. NE, Washington, D.C. 20002 by defendant Brenda Carew.

44. As a result of the defendant's conspiracy, the plaintiffs have suffered a severe economic injury, including lost equity, and other compensatory damages totaling more than two hundred-fifty thousand dollars ($250,000.00).

### SECOND CAUSE OF ACTION
### *Violation of the District of Columbia Practices and Procedures Act by all Defendants*

45. Plaintiffs incorporates all paragraphs and statements in this complaint and alleges the following;

46. Defendants utilized artifice and deception to take advantage of plaintiff's confusion and lack of sophistication. More specifically, the defendant's knew or should have known that plaintiff had little knowledge of the purported transfer of their property.

47. Defendant knew or should have known that plaintiff was unaware of the various charges imposed on her in the transaction and the fact that some charges were illegal under the law.

48. Defendant knew or should have known that plaintiff was unaware of the disadvantages of refinancing a preexisting mortgage in the amount of $2,388.24 in favor of an $180,000.00 mortgage. Defendant also knew or should have known that plaintiff would have difficulty repaying the loan and was therefore, subjecting herself to the likelihood of foreclosure. Defendants nonetheless omitted information and explanations concerning these matters.

49. To the extent, if any, that the plaintiff was able to, she justifiably relied in fact and in law on the misrepresentation of the defendants and on the fraudulent disclosures and failures to disclose of the defendants, and as the result of the defendants' fraudulent disclosures and failures to disclose, the plaintiff was deprived of the good faith services of her lender and consequently was damaged in receiving loans that she did not need and on less favorable terms than she otherwise could have obtained.

50. While representing to plaintiff that it was extending a loan to stop the foreclosure of the subject property would be advantageous, the defendants omitted the material fact that it would charge substantially higher points and hidden fees, specifically, the miscellaneous fees and "phantom" deposits..

51. While representing to plaintiff that it was loaning them money to stop the foreclosure, the defendants omitted the material fact that it would transfer the property to defendant Brenda Care such that she may obtain a loan against the property.

52. These omissions by the defendant were material to the transaction.

53. The defendants acted intentionally so as to induce the plaintiff to enter into the transaction.

54. The defendants' conduct constituted an "unfair and deceptive trade practice" within the meaning of the District of Columbia Consumer Protection Act in that, among other reasons:

    a. the defendant committed a violation by making a loan when it knew or should have known there was no reasonability probability of repayment in full; D.C. Code § 28-3904(r)(1);

    b. the defendant misrepresented as to a material fact which tends to mislead; D.C. Code § 28-3904(e);

    c. the defendant failed to state a material fact the failure of which tend to mislead; D.C. Code § 28-3904(f);

    d. Defendant violated D.C. Code § 26-1114(a)(8), a per se unfair and deceptive trade practice, making it unlawful for a person to make or enforce unconscionable terms or provisions involving real estate financing transactions

55. The plaintiff suffered damages from defendant' conduct, including excessive loan fees, interest and costs and emotional distress concerning the ability to pay back loans and possible foreclosure loss of her home.

**WHEREFORE** the plaintiff states, as a direct and proximate result of defendant's conduct, plaintiff suffered the following injuries and damages, including, but not limited to:

    a. Mental anguish in the past and future

    b. Embarrassment, Humiliation and Emotional Distress.

    c. Statutory damages

    d. paying fees to the defendants to which Defendants were not entitled;

    e. paying excessive interest and other charges on loans to the defendants and/or their agents and/or their confederates; and

    f. post-judgment interest.

    g. treble damages

### THIRD CAUSE OF ACTION

### Common Law Fraud against all Defendants

56. Plaintiffs incorporates all paragraphs and statements in this complaint and alleges the following;

57. As her mortgage lender and broker, the defendants assumed a fiduciary duty to the plaintiffs. The defendants defrauded the plaintiff by failing to disclose information that it had a duty to disclose, in particular, the financial disadvantages to her of obtaining a mortgage loan based on an excessively and fraudulently high stated principle price when compared to available housing with comparable work to be done and when compared to her limited financial means, and the financial disadvantages of executing four nearly simultaneous real estate closings on her home.

58. To the extent, if any, that the plaintiff was able to, she justifiably relied in fact and in law on the good faith of her broker and on the fraudulent disclosures and failures to disclose of her mortgage lender broker, and as the result of the defendants' fraudulent disclosures and failures to disclose, The plaintiff was deprived of the good faith services of her broker and consequently was damaged in receiving loans that she did not need and on less favorable terms than she otherwise could have obtained.

59. The defendant knew that the representation was false, or the representation was made with such reckless disregard for the truth that knowledge of the falsity of the statement can be imputed to the defendant.

60. The defendant made the false representation for the purpose of defrauding the plaintiff.

61. Such fraud caused the plaintiff damages, including but not limited to the loss of the honest, good faith services of her lender and broker and the consequent loss of the more favorable loan terms which would have been available to her, had she been seeking the services of a broker and had she been seeking to procure a loan, but for the defendants' fraudulent disclosures and failures to disclose; the encumbrance of her title to her home as security for the April 6, 2004 loan made to her directly by defendants nearly simultaneously to the time when the defendants purported to have been acting as the plaintiff's

broker; unearned broker's fees on the April 6, 2004 loan; and the indebtedness to defendants New Century Mortgage, the corporation which employed the defendants.

62. The defendants acted maliciously in undertaking such fraud, in deliberate and reckless violation of the plaintiff's rights, entitling her to rescind the September 29, 2005 loan, and in the alternative to compensatory and punitive damages.

**WHEREFORE** the plaintiff states, as a direct and proximate result of defendant's conduct, plaintiff suffered the following injuries and damages, including, but not limited to:

a.   Mental anguish in the past and future

b.   Embarrassment, Humiliation and Emotional Distress.

c.   Statutory damages

d.   paying fees to the defendants to which Defendants were not entitled;

e.   paying excessive interest and other charges on loans to the defendants and/or their agents and/or their confederates; and

f.   paying interest on loans to third parties which exceed the amounts which would have been due if the defendants had acted properly in the transactions.

g.   attorney's fees and costs.

### FOURTH CAUSE OF ACTION
### *Defendants Violation of the Truth In Lending Act*
### *All defendants*

63. Plaintiffs repeat and reallege all paragraphs above as if fully set forth herein.

64. Notably absent from the settlement documents provided to the plaintiff by the defendant was a Truth-in-Lending Disclosure Statement that is required to so disclose to plaintiff the amount financed, finance charge, and annual percentage rate as required by TILA and the regulation promulgated pursuant thereto, 12 C.F.R. § 226.1 et. seq. ("Regulation Z").

65.   Although plaintiff was fraudulently induced to contract with the defendant Fremont to pay a $444,000.00 mortgage loan, defendant failed to disclose the exorbitant fees charges to the plaintiffs in the September 29, 2005 loan transaction.  Defendant identified $55,500.00 and $24,264.82 as items "unpaid by seller."  These amounts should have been classified as a "finance Charge" for purposes of TILA.

66.   As a result of these disclosure violations, defendants are liable to plaintiff under 15 U.S.C. § 1640(a) for:

   a.   Actual damages;

   b.   Statutory damages of $2,000.00; and

   c.   Reasonable Costs and attorney's fees.

### FIFTH CAUSE OF ACTION
*Rescission*
*Defendant Fremont*

67.   Plaintiff repeat and reallege all paragraphs above as it fully set forth herein.

68.   The consumer credit transaction between the parties was subject to the right of rescission as described by 15 U.S.C. § 1635 of TILA and Section 226.23 of Regulation Z, 12 C.F.R. § 226.23.

69.   Defendant failed to deliver all material disclosures required by TILA and Regulation Z.  The disclosure violations include, but are not limited to:

   a.   failing to properly and accurately disclose the "amount financed," using that term in violation of Regulation Z § 226.18(b) and 15 U.S.C. § 1638(a)(2)(A);

   b.   failing to clearly and accurately disclose the "finance charge," using that term, in violation of Regulation Z §§ 226.4 and 226.18(d) and 15 U.S.C. § 1638(a)(3); and

   c.   failing to clearly and accurately disclose the "annual percentage rate," using that term in violation of Regulation Z § 226.18(e) and 15 U.S.C. § 1638(a)(4).  The plaintiffs have a continuing right to rescind the transaction until receipt of all material disclosures described above, pursuant to 15 U.S.C. § 1635(a) and Regulation Z § 226.23(a)(3).

70.   Plaintiff rescinded the transaction by sending to the defendant, by U.S. mail, a notice of rescission on March 4, 2008 and a follow-up notice of rescission by certified mail on March 26, 2006.

71.   More than twenty days have passed since Plaintiff rescinded the transaction and defendant has failed to take any action necessary or appropriate to reflect the termination of any security interest created under the transaction, as required by 15 U.S.C. § 1635(b) and Regulation Z § 226.23(d)(2).  In addition, the defendant has failed to return to the plaintiff any money or property given by the plaintiff to anyone, including the defendant, as required by U.S.C. § 1635(b) and Regulation Z § 226.23(d)(2).

72.   As a result of the aforesaid violations of TILA and Regulation Z pursuant to 15 U.S.C. 1635(a) and 1640(a).  Defendant is liable to plaintiff for:

   a.   rescission of the transaction, including a declaration that each plaintiff is not liable for any finance charges or other charges imposed by defendant;

   b.   termination of any security interest in plaintiff's property created pursuant to the transaction;

   c.   return of any money or property given by the plaintiff to anyone, including the defendant, in connection with the transaction;

   d.   statutory damages of $4,000.00 for each plaintiff (consisting of $2,000.00 for the disclosure violation and $2,000.00 for the failure to rescind);

   e.   forfeiture of return of loan proceeds;

   f.   actual damages in an amount to be determined at trial;

   g.   an award of reasonable attorney's fees and costs.

### SIXTH CAUSE OF ACTION
### *Violation of TILA and RESPA*
### *All Defendants*

73.   Plaintiff repeat and reallege all paragraphs above as if fully set forth herein.

74.   Among the charges defendant imposed in the plaintiff's transaction dated September 29, 2005 was a $55,500.00 payment to defendant Brenda Carew, a charge defendant designated on the HUD-1 as a "deposit."

75.     Among the charges defendant imposed in the plaintiff's transaction dated
        September 29, 2005 was a $55,500.00 payment to defendant Brenda Carew, a
        charge defendant designated on the HUD-1 as a "seller held second loan."

76.     Among the charges defendant imposed in the plaintiff's transaction was a
        $5,000.00 payment to defendant Town and Credit, a charge defendant
        designated on the HUD-1 as a "Broker Credit."

77.     Among the charges defendant imposed in the plaintiff's transaction was a
        $24,264.82 payment to Defendant Brenda Carew, a charge defendant
        designated on the HUD-1 as a "Seller Contribution."

78.     Among the charges defendant imposed in the plaintiff's transaction was a
        $13,999.00 payment to defendant Town and Country, a charge defendant
        designated on the HUD-1 as a "broker fee."

79.     Plaintiffs believes and therefore aver that all of the defendants, have an on-
        going relationship, one that was not explained nor disclosed to them.

80.     The defendant Town and Country failed to provide the plaintiff with the
        correct Truth-in-Lending disclosure and thus did not include the "broker fee"
        within the "finance charge" in the required disclosures.

81.     The defendant Fremont makes or invests in residential real estate loans
        aggregating more than $1 million per year. The transaction at issue in this
        case was, therefore, a "federally related mortgage loan" within the meaning of
        Section 3 and 8 of the RESPA, 12 U.S.C. §§ 2602, 2607.

82.     As the result of the defendant's violations of TILA, the defendant is liable to
        the plaintiff pursuant to 15 U.S.C. § 1640(a) in the amount of $2,000.00, plus
        attorney's fees and costs.

83.     As the result of the violations of RESPA, the defendant is liable to the
        plaintiff pursuant to 12 U.S.C. § 2607(d), for statutory damages in the amount
        of three times the charges imposed on the plaintiff for settlement services and
        attorney's fees and costs.

**WHEREFORE** the plaintiff states, as a direct and proximate result of defendant's
conduct, plaintiff suffered the following injuries and damages, including, but not
limited to:

a. Mental anguish in the past and future

b. Embarrassment, Humiliation and Emotional Distress.

c. Statutory damages

d. paying fees to the defendants to which Defendants were not entitled;

e. paying excessive interest and other charges on loans to the defendants and/or their agents and/or their confederates; and

f. paying interest on loans to third parties which exceed the amounts which would have been due if the defendants had acted properly in the transactions.

## SEVENTH CAUSE OF ACTION
### Violation of Mortgage Lenders and Brokers Act D.C. Code § 26-1110 et. seq.
### All Defendants

84. Plaintiff repeat and reallege all paragraphs above as if fully set forth herein.

85. In the District of Columbia, mortgage lenders are regulated by the Mortgage lender and Broker Act, D.C. Code § 26-1101 et. seq. Plaintiff alleges the defendants violated the act accordingly:

86. D.C. Code § 26-1103 mandates that any person who engages in business as a mortgage lender or mortgage broker, or both must be licensed under this chapter. The defendants actively conducted business in the District of Columbia on a regular basis without licensing.

87. D.C. Code §§ 26-1113, 26-1114(a)(7) prohibits the failure to provide the borrower with a financing agreement executed by the lender. The defendant failed to provide the requisite disclosures

88. D.C. Code § 26-1114(a)(6)(B) prohibits a mortgage lender of broker to make any mortgage loan with the intent to foreclose on the borrower's property. Intent to foreclose on the borrower's property can be shown by the lack of the probability of full repayment of the loan by the borrower.

89.   D.C. Code § 26-1114(b)(3)(A) prohibits any mortgage broker required to be licensed under this act to receive compensation from another mortgage broker in a given real estate transaction without disclosure of dual capacity.

90.   Furthermore, despite these prohibitions under D.C. Code § 26-1101 et. seq.,

   a.   the defendants were not, at the time of the loan transaction, licensed to do business in District of Columbia;

   b.   the defendant fraudulently induced the plaintiffs to borrow $555,000.00 in cash and imposed approximately $29,232.57 in additional points and fees.

**WHEREFORE** the plaintiff states, as a direct and proximate result of defendant's conduct, plaintiff suffered the following injuries and damages, including, but not limited to:

   a.   Mental anguish in the past and future

   b.   Embarrassment, Humiliation and Emotional Distress.

   c.   Statutory damages and actual damages

   d.   paying fees to the defendants to which Defendants were not entitled;

   e.   paying excessive interest and other charges on loans to the defendants and/or their agents and/or their confederates; and

   f.   paying interest on loans to third parties which exceed the amounts which would have been due if the defendants had acted properly in the transactions.

   g.   attorney's fees and costs.

### EIGHTH CAUSE OF ACTION
*Violation of Home Lenders Protection Act D.C. Code § 26-1151 et. seq.*

91.   Plaintiff repeat and reallege all paragraphs above as if fully set forth herein.

92.   In the District of Columbia, mortgage lenders are regulated by the Home Lenders Protection Act, D.C. Code § 26-1151 et. seq. Plaintiff alleges the defendants violated the act accordingly:

93. D.C. Code § 26-1152.02 mandates that a lender shall not make a covered loan if the borrower, at the time that the covered loan is closed, cannot reasonably be expected to make the scheduled payments. The plaintiffs verified gross income is substantially less than their monthly mortgage payment totals of $3,600.00. The lender knew or should have known that the borrower did not have the ability to pay her mortgage.

94. D.C. Code §§ 26-1152.11 prohibits the failure to provide the borrower with a Red Flag Warning Disclosure Notice executed by the lender. The defendant failed to provide the requisite disclosures.

95. D.C. Code § 26-1152.02 prohibits a mortgage lender of broker to make any mortgage loan with the intent to foreclose on the borrower's property. Intent to foreclose on the borrower's property can be shown by the lack of the probability of full repayment of the loan by the borrower.

96. D.C. Code § 26-1152.16 A lender shall not make a covered loan that includes terms under which any periodic payments required under the loan are paid in advance from loan proceeds.

97. Furthermore, despite these prohibitions under D.C. Code § 26-1151 et. seq.,

   a. the defendants were not, at the time of the loan transaction, licensed to do business in District of Columbia;

   b. the defendant fraudulently induced her to borrow an $555,000.00 in cash and imposed approximately $29,232.57 in additional points and fees.

**WHEREFORE** the plaintiff states, as a direct and proximate result of defendant's conduct, plaintiff suffered the following injuries and damages, including, but not limited to:

   a. Mental anguish in the past and future

   b. Embarrassment, Humiliation and Emotional Distress.

   c. Statutory damages and actual damages

   d. paying fees to the defendants to which Defendants were not entitled;

   e. paying excessive interest and other charges on loans to the defendants and/or their agents and/or their confederates; and

    f.    paying interest on loans to third parties which exceed the amounts which

would have been due if the defendants had acted properly in the

transactions.

    g.    attorney's fees and costs.

March 26, 2008

                                  William C. Johnson, Jr., Esq.
                                  1229 15th St. NW
                                  Washington, D.C. 20005
                                  (202) 483-0808

Plaintiff Demands for Jury Trial

March 26, 2008

                                  William C. Johnson, Jr., Esq.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

Joanne Blue, et. al. )
1001 F Street, NE )
Washington, D.C. 20002 )
        Plaintiffs, )

      v. )

Freemont Investment & Loan, et. al. )
2727 E. Imperial Highway )
Brea, California 92821 )
        Defendants. )

0002679-08

CA No.:

DEMAND FOR JURY TRIAL

### MOTION FOR TEMPORARY RESTRAINING ORDER

    **COMES NOW** the plaintiffs, Joanne Blue, Edna Robinson, Halbert Blue and Rose Blue, by and through counsel, William C. Johnson, Jr., Esq. respectfully moves this Court to issue a Temporary Restraining Order and Preliminary Injunction, restraining and enjoining the Defendants, their agents, servants, and all other persons acting in concert and participation with them from the following activity: 1) foreclosing and evicting the plaintiffs from the subject property of this matter, and 2) from enforcing this matter to gain possession in the Landlord & Tenant Branch. The grounds for this Motion are more particularly set forth in the accompanying Verified Bill of Complaint and Memorandum of Points and Authorities.

Date: April 7, 2008

          Respectfully submitted,

          William Johnson, Esq.
          (DC Bar No. 470314)
          1229 15th St., N.W.
          Washington, D.C. 20005
          Phone: (202) 483-0808

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 7, 2007, a copy of the foregoing was sent

via first class mail to the following:

Freemont Investment & Loan
2727 E. Imperial Highway
Brea, California 92821

Executive Title & Escrow
9500 Arena Drive #480
Largo, Maryland 20774

Town and Country Mortgage and Financial
Services, Inc.
1300 Mercantile Lane
Suite 150
Largo, Maryland 20776

Dennis Bishop
1300 Mercantile Lane
Suite 150
Largo, Maryland 20776

Brenda Carew
10423 Beacon Ridge Drive
Mitchellville, Maryland 20721

Date:  April 7, 2008

William C. Johnson, Jr.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
### CIVIL DIVISION

| | |
|---|---|
| Joanne Blue, et. al. | ) |
| 1001 F Street, NE | ) |
| Washington, D.C. 20002 | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )    CA No.: |
| | ) |
| Freemont Investment & Loan, et. al. | )    DEMAND FOR JURY TRIAL |
| 2727 E. Imperial Highway | ) |
| Brea, California 92821 | ) |
| Defendants. | ) |

### MEMORANDUM OF POINTS AND AUTHORITIES

**COMES NOW** the plaintiffs, by and through counsel, William C. Johnson, Jr., Esq., hereby submits their memorandum of points and authorities in support of their motion for a temporary restraining order and preliminary injunction. In support of their motion the plaintiffs state as follows:

### PURPOSE

The purpose of the instant action is to address a fraudulent practice involving the mortgage lending industry and subprime loans. The act complained of involves the sale-leaseback scheme whereby individual homeowners are fraudulently induced to transfer their property to third parties in an effort to stave-off foreclosure. The homeowner is told they will receive a loan to stop the foreclosure. They are informed that in order to "secure the loan" they must "sign-over" their mortgage deed until the loan is repaid.

The third-party engages straw persons to facilitate home loans in an effort to abscond with the homeowner's equity. The straw person then in turn sells the property back to the homeowner without his knowledge. The third-party arranges the financing of the property through the assistance of a mortgage broker and hard money lender and the homeowner is then informed they have a new loan to refinance their home when in fact it actually being resold back to them. The hard money lender is aware of the circumstances

surrounding the sell and relaxes it application and lending process in order to accommodate the loan transaction.

The loan, in and of itself, is inherently costly and beyond the payment ability of the homeowner. The inability to make mortgage payments makes the property susceptible to foreclosure. Once foreclosed upon, the homeowner is precluded from bringing any cause of action related to the default of the mortgage debt. The plaintiffs in the instant has fallen victim to the scheme and states as follows:

## FACTS

1.  On or about April 2004, plaintiff Halbert and Rose Blue, an elderly couple and their daughters were being foreclosed upon by their lender. The plaintiffs were approached by Defendant Town & Country Mortgage through Denis Bishop and he offered to loan them the money to stop the foreclosure and required them to sign a deed to "secure" his loan.

2.  The plaintiffs were informed by defendant Denis Bishop that they could stay in their home as long as they continued to pay the mortgage. The plaintiffs agreed in an effort to stop the foreclosure.

3.  Unbeknownst to the plaintiff, a deed purporting to sell their property to a "Brenda Carew," was filed with the register of deeds. Brenda Carew was unknown to the plaintiffs. **Exhibit 1**.

4.  Defendant Brenda Carew, utilizing defendant Town & Country" as the mortgage broker, obtained a loan from New Century Mortgage in the amount of $387,000.00 to purchase the property. The purported sales price was $430,000.00. The HUD-1 indicates the existence of a $43,000.00 deposit. **Exhibit 2.**

5.  Brenda Carew used the proceeds of the loan to payoff the existing mortgage/fees alleged to be $308,000.00 and retained the overage. The plaintiffs were never aware of the "actual" sale of the property and continued to live in the home. The plaintiffs admit to receiving cash in the amount of $8,000.00. **Exhibit 2 and Exhibit 3.**

6.  On or about September 1, 2005, the property was facing foreclosure again. This time however, the loan was in the name of "Brenda Carew." Defendant

Brenda Carew received notices of the foreclosure at the home of the plaintiff. The plaintiff's were informed by Dennis Bishop that they would be given a loan to refinance their home so they could stop the foreclosure. **Exhibit 4.**

7.     The plaintiffs never applied for a loan, but, in fact received an "acquisition loan" and in effect repurchased their home. **Exhibit 4.**

8.     The plaintiffs did not receive an appraisal of their home, however they did receive a notice claiming that if they wanted to receive an appraisal they had to request one from the home office in California. **Exhibit 5.**

9.     The sale of the property was from Brenda Carew to the plaintiff in the amount of $555,000.00. The plaintiff Joanne Blue and Edna Robinson received an unsolicited loan from Fremont Investment & Loans in the amount of $444,000.00. Once again, there is a fictitious deposit. This time the deposit is in the amount of $55,500.00. **Exhibit 6 and Exhibit 7.**

10.    There is also a second mortgage held by defendant Brenda Carew in the amount of $55,500.00. This time, the plaintiffs received nothing at the table. **Exhibit 6.**

11.    The plaintiffs did not apply for the loan nor could they qualify for the loan. Defendant Denis Bishop arranged for the loan without the plaintiff's knowledge. **Exhibit 4.**

12.    The plaintiffs nonetheless, attended the closing because they were told this would stop the foreclosure. **Exhibit 4.**

13.    The plaintiffs Halbert and Rose Blue were left completely out of the transaction and ultimately had their property taken from them. **Exhibit 6.**

14.    The plaintiffs Joanne Blue and Edna Rose ended up with a mortgage note which exceeded their means to pay. **Exhibit 4.**

15.    Defendant Fremont is foreclosing upon the loan in the Landlord & Tenant Court. The Landlord & Tenant Court is a possessory Court, however, its determination will have preclusive effect on the determination of this Court.

### STANDARD FOR REVIEW

16. The decision whether to grant injunctive relief is within the discretion of the Court. *See e.g., District of Columbia v. Sierra Club*, 670 A.2d 354, 361 (D.C.1996), *citing Wieck v. Sterenbuch*, 350 A.2d 384, 387 (D.C.1976).

17. To obtain a preliminary injunction Plaintiff must clearly demonstrate "(1) that there is a substantial likelihood [it] will prevail on the merits; (2) that [it] is in danger of suffering irreparable harm during the pendency of the action; (3) that more harm will result to [it] from the denial of the injunction than will result to the defendant from its grant; and ... (4) that the public interest will not be disserved by the issuance of the requested order." *Sierra Club*, 670 A.2d at 361, *citing Wieck*, 350 A.2d at 387.

## ARGUMENT

### Substantial Likelihood of Success on the Merits

18. The plaintiff in this action will be able to prove the defendant fraudulently induced the plaintiff to convey their mortgage deed to the defendant Brenda Carew. *See, e.g., M.M. & G. Inc. v. Jackson*, 612 A.2d 186, 191 (D.C.1992) ("It is well settled that a forged deed cannot validly transfer property and that even a bona fide purchaser takes nothing from that conveyance"), *citing Unity Banking & Saving Co. v. Bettman*, 217 U.S. 127, 135 (1910).

19. This honorable Court has long held that the entire transaction leading to the conveyance of documents of title must be free of fraud. That a finding of fraud in the mortgage transaction shall preclude foreclosure.

20. In *Greene v. Gibraltar Mortg. Inv. Corp.*, 488 F. Supp. 177 (D.C. 1980) an action was brought challenging validity of promissory note and deed of trust. The District Court, June L. Green, J., held that evidence established that transaction was void for fraud, and purchaser of note as well as parties involved in loan transaction would be enjoined from instituting foreclosure proceeding. *Greene* at 179.

21. The plaintiffs will have no problem proving that all of the defendants were in collusion in the fraudulent conveyance of the property and the obtaining of a mortgage on the property under false pretenses.

22. The defendants clearly utilized a person (Brenda Carew) unknown to this transaction in order to facilitate the mortgage transaction. **Exhibit 1**

23. The plaintiffs were under duress due to the imminent foreclosure and were informed by defendant Dennis Bishop and defendant Town & Country Mortgage that they could receive a loan in order to stop the foreclosure sale.

24. The plaintiffs were unaware that the defendants intended for them to convey their property to defendant Brenda Carew such that she may obtain a mortgage on their property in her name. **Exhibit 1 and Exhibit 2**

25. A sale of the property was conducted without the plaintiff's knowledge through the assistance of defendant Executive Title and Escrow, LLC. The first loan was provided by the now defunct and Bankrupt lender, New Century Mortgage Corporation. **Exhibit 2.**

26. This initial transaction was fraudulent and the deed conveying the property was void ab initio.

27. The very existence of the plaintiff's belief that they were entering a "loan transaction" and the defendant's execution of a "purchase transaction" indicates a meeting of the minds as to the transaction did not exist. **Plaintiff's Affidvit.**

28. Where a party's assertion not in accord with the facts induces the apparent assent of another party, there is no meeting of the minds and hence no contract. *Hill v. Marston*, supra; *Lyon v. Smith*, 2 App.D.C. 37, 39 (1893) (deed of trust void where true rate of interest misrepresented)

29. The second sales transaction involved the current noteholder and defendant Fremont Investment. **Exhibit 7**

30. The defendant Dennis Bishop obtained an "acquisition mortgage loan" from the defendant Fremont in the name of the plaintiffs Joanne Blue and Edna Robinson without their knowledge. **Exhibit 6 and Exhibit 7**

31. The plaintiffs never applied for a loan, however, were informed that they received a loan from defendant Fremont that would enable them to "refinance" their home. **Plaintiff's Affidavit**

32. The plaintiffs understood this loan to be a refinancing of their existing loan but, in actuality, it was a purchase from defendant Brenda Carew. **Exhibits 4, 6 and Exhibit 7**

33. The plaintiffs in this action will have no problem proving that they received a fraudulent mortgage loan from the defendant

34. In this case, as in Greene, the defendant failed to disclose material facts to plaintiff in the negotiations that led to the promissory note and deed of trust. obtained by the defendant Fremont. **Plaintiff's Affidavit**

35. First, when plaintiff discussed the terms of a loan with defendant they agreed that the transaction would be a loan to stop the foreclosure. **Plaintiff's Affidavit**

36. Defendant Dennis Bishop and defendant Town & Country did not explain or disclose that it was arranging a sale of the property to their business partner, defendant Brenda Carew. **Plaintiff's Affidavit**

37. Second, the defendant failed to inform the plaintiff's that instead of refinancing the transaction to pay for the "loan" they thought they received, that the plaintiff's were in fact repurchasing their existing home for an amount substantially higher that the original mortgage. **Exhibits 4, 6 and Exhibit 7**

38. Moreover, that this was a sham designation is evidenced by the fact that Brenda Carew absconded with nearly $250,000.00 in equity, paid substantial fees to defendant Dennis Bishop and Town & Country. **Exhibit 6.**

39. These material omissions become particularly significant once the circumstances surrounding execution of the promissory note and deed of trust are examined.

**Danger of Suffering Irreparable Harm During the Pendency of the Action**

40. The plaintiffs are facing foreclosure in the Landlord and Tenant Branch of the Superior Court.

41. The plaintiffs are at risk of losing their home and property through a fraudulent transaction that is resulting in foreclosure action.

42. The plaintiffs are placed in a precarious position such that an adjudication of the plaintiff's claims in the Landlord and Tenant Branch will have a preclusive effect upon the causes of actions they have in the civil branch.

43. The plaintiffs are asking the Court to enjoin the action in the L&T Court in order to adjudicate their issues regarding the mortgage transaction.

**Plaintiff will Suffer More harm if the Injunction is Denied than the Defendant from its Grant**

44. Plaintiff satisfies the third prong of the test; more harm will result to Plaintiff from the denial of the injunction than will befall defendants if it is granted.

45. As discussed above, there is a strong likelihood that the deed held by Defendants is a nullity. In this case, Defendant Fremont does not suffer any legal harm in being restrained from foreclosure on the property to a third party.

46. In contrast, Plaintiff's interest in the property that Defendant Fremont was in the process of foreclosing would remain unresolved; and its attorney's fees would rise if litigation involving a new purchaser at a foreclosure sale.

47. As discussed above, the issuance of a preliminary injunction would also be in Plaintiffs best interests. The potential consequences of the Court's decision strongly favor granting the injunction.

**The Public Interest will be served by the issuance of Preliminary Injunction**

48. Finally, the public interest is well served by this preliminary injunction. The judicial system should not encourage, sanction, or foster fraudulent transfers of property. Since this transfer is suspect at best and fraudulent at worst, the public interest weighs in favor of maintaining the *status quo* until the transaction can be further addressed.

49. Furthermore, a third party who knows nothing of the facts described above could purchase the property from Defendant and attempt to redeem it. Such third party would not gain title to the property and would become an innocent victim. See *Jackson*, 612 A.2d at 191.

50. Land is a unique, valuable, and potentially productive commodity; it is in the public interest that the proper owner be determined as soon as possible.

**WHEREFORE**, the plaintiffs request this honorable Court grant their motion for a Temporary Restraining Order and Preliminary Injunction.

Date April 7, 2008

William C. Johnson, Jr., Esq.
1229 15th St. NW
Washington, D.C. 20005
(202) 483-0808

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 7, 2007, a copy of the foregoing was sent

via first class mail to the following:

Freemont Investment & Loan
2727 E. Imperial Highway
Brea, California 92821

Executive Title & Escrow
9500 Arena Drive #480
Largo, Maryland 20774

Town and Country Mortgage and Financial
Services, Inc.
1300 Mercantile Lane
Suite 150
Largo, Maryland 20776

Dennis Bishop
1300 Mercantile Lane
Suite 150
Largo, Maryland 20776

Brenda Carew
10423 Beacon Ridge Drive
Mitchellville, Maryland 20721

Date:  April 7, 2008

William C. Johnson, Jr.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

Joanne Blue, et. al.            )
         Plaintiffs,        )
                            )
        v.                  )     CA No.:
                            )
Freemont Investment & Loan, et. al.   )     DEMAND FOR JURY TRIAL
         Defendants.      )
_____ )

## TEMPORARY RESTRAINING ORDER

**UPON CONSIDERATION** of the foregoing Motion for a Temporary Restraining Order and the verified Bill of Complaint, the Court having found the plaintiffs will suffer irreparable harm if the Temporary Restraining Order is not issued in that Plaintiff's property will be irreparably damaged, and the Court having found that it is manifest that the harm to plaintiff will be irreparable and is not susceptible to monetary compensation, it is, this ___ day of _____, 2008 at _____ a.m./p.m., by the Superior Court for the District of Columbia.

ORDERED that defendant Fremont Investment & Loan. and its agents, servant and employees are enjoined and restrained from selling the real property located at 1001 F St. NE, Washington, D.C. 20002

ORDERED that this Temporary Restraining Order, unless extended by further court order, shall expire on this ____ day of _____, 2008; and it is further

ORDERED that a party or any person affected by this Order may apply for a modification or dissolution of this Court may prescribe.

_____
Judge

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

Joanne Blue, et. al.               )
1001 F Street, NE             )
Washington, D.C. 20002       )
           Plaintiffs,       )
                           )
       v.                   )    CA No.:
                           )
Freemont Investment & Loan, et. al.  )    DEMAND FOR JURY TRIAL
2727 E. Imperial Highway       )
Brea, California 92821         )
           Defendants.     )
_____)

## **AFFIDAVIT**

1.    Affiant, Joanne Blue, avers that I am over the age of eighteen (18) and competent to testify to the matters contained herein.

2.    I have personal knowledge of all of the facts contained herein.

3.    On or about April 2004, my parents and I were being foreclosed upon by our lender. We were approached by Defendant Town & Country Mortgage through Denis Bishop and he offered to loan us the money to stop the foreclosure and required us to sign a deed to "secure" his loan.

4.    We were informed by defendant Denis Bishop that we could stay in our home as long as we continued to pay the mortgage. We agreed in an effort to stop the foreclosure.

5.    Without our knowledge, a deed purporting to sell our property to a "Brenda Carew," was filed with the register of deeds. We had never heard of a Brenda Carew..

6.    Defendant Brenda Carew, utilizing defendant Town & Country" as the mortgage broker, obtained a loan from New Century Mortgage in the amount of $387,000.00 to purchase the property. The purported sales price was $430,000.00. The HUD-1 indicates the existence of a $43,000.00 deposit.

7.     Brenda Carew used the proceeds of the loan to payoff the existing mortgage/fees alleged to be $308,000.00 and retained the overage. We were never aware of the "actual" sale of the property and continued to live in our home. We received approximately $8,000.00 from Mr. Bishop..

8.     On or about September 1, 2005, the property was facing foreclosure again. This time however, the loan was in the name of "Brenda Carew." Defendant Brenda Carew received notices of the foreclosure at the home of the plaintiff. We were informed by Dennis Bishop that we would be given a loan to refinance our home so we could stop the foreclosure.

9.     We never applied for a loan, but, in fact received an "acquisition loan" and in effect repurchased their home.

10.     The plaintiffs did not receive an appraisal of their home, however they did receive a notice claiming that if they wanted to receive an appraisal they had to request one from the home office in California.

11.     There was no disclosure that the sale of the property was from Brenda Carew to Edna Robinson and myself in the amount of $555,000.00. Edna and I received an unsolicited loan from Fremont Investment & Loans in the amount of $444,000.00. We did not receive a deposit for the sale in the amount of $55,500.00.

12.     There is also a second mortgage held by defendant Brenda Carew in the amount of $55,500.00. This time we received nothing at the table.

13.     We did not apply for the loan nor could they qualify for the loan. Defendant Denis Bishop arranged for the loan without our knowledge.

14.     We attended the loan closing because they were told this refinance would stop the foreclosure.

15.     My parents, Halbert and Rose Blue, were left completely out of the transaction and ultimately had their property taken from them.

16.     Edna Rose and I ended up with a mortgage note which exceeded our ability to pay.

17.     Defendant Fremont is foreclosing upon the loan in the Landlord & Tenant Court.

## OATH

**I HEREBY AFFIRM** under penalties of perjury that the foregoing statement is true to the best of my knowledge

_____
Joanne Blue

Date April 7, 2008

William C. Johnson, Jr., Esq.
1229 15th St. NW
Washington, D.C. 20005
(202) 483-0808

# EXHIBIT

# 1

File No. 04-435RTL
DEED-SHORT FORM D.C.

**This Deed**, made this 27th day of **April, 2004**, by and between Halbert T. Blue, Rose M. Blue and Joanne Blue, parties of the first part, and Brenda D. Carew, party of the second part.

WITNESSETH, that in consideration of the sum of FOUR HUNDRED THIRTY THOUSAND AND 00/100 DOLLARS **($430,000.00)**, the parties of the first part do hereby grant unto the party of the second part, in fee simple, as sole owner, all that piece or parcel of land, together with the improvements, rights, privileges and appurtenances to the same belonging, situate in the District of Columbia, described as follows, to wit:

LOT 18 IN VINCENT W. KRAMER'S SUBDIVISION OF LOTS IN SQUARE 961 AS PER PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 75 AT FOLIO 55 SUBJECT TO A PERPETUAL RIGHT OF WAY OVER THE REAR 12 FEET OF SAID LOT NUMBERED 18 FOR THE USE AND BENEFIT OF LOTS NUMBERED 19, 20 AND 21 IN SAID IN SAID SUBDIVISION.
PROPERTY ADDRESS:1001 F STREET N.E WASHINGTON DC 20002
PROPERTY TAX ID NUMBER:SQUARE 0961 LOT 0018

AND the said parties of the first part covenant that they will warrant specially the property hereby conveyed; and that they will execute such further assurances of said land as may be requisite.

WITNESS the hands and seals the day and year first hereinbefore written.

IN PRESENCE OF:

_____     _Halbert T. Blue_ {SEAL}
                             **Halbert T. Blue**

_____     _Rose M. Blue_ {SEAL}
                             **Rose M. Blue**

_____     _Joanne Blue_ {SEAL}
                             **Joanne Blue**

DISTRICT OF COLUMBIA

I, Lawrence Elliott, a Notary Public, in and for the jurisdiction aforesaid, do hereby certify that Halbert T. Blue, Rose M. Blue and Joanne Blue, who are personally well known to me as the grantors in, and the persons who executed the foregoing and annexed deed, bearing the date of **April 27, 2004**, personally appeared before me in the said District and acknowledged the said deed to be their act and deed.

Given under my hand and seal this 27th day of April, 2004.

_____
Notary Public

My Commission Expires: _____

AFTER RECORDING MAIL TO:            GRANTEE ADDRESS:
Executive Title and Escrow L.L.C.
9500 Arena Drive, Suite 480
Largo, MD 20774

Doc. 2004067467
Book:
Page:
Filed & Recorded
  05/24/2004  02:01:58 PM
LARRY TODD
RECORDER OF DEEDS
WASHINGTON D.C. RECORDER OF DEEDS
  RECORDING        $     20.00
  SURCHARGE        $      6.50
  RECORDATION TAX  $  6,458.00
  TRANSFER TAX 1.  $  6,458.00

# EXHIBIT

# 2

## A. Settlement Statement

U.S. Department of Housing and Urban Development
OMB Approval No. 2502-0265 (expires 9/30/2006)

| B. Type of Loan | | | |
|---|---|---|---|
| 1. ☐FHA | 2. ☐FmHA | 3. ☐Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
| 4. ☐VA | 5. ☐Conv. Ins | | 04-435RTL | 0001498691 | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals. WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

TitleExpress Settlement System

| | |
|---|---|
| D. NAME OF BORROWER: | Brenda D. Carew |
| ADDRESS: | 1001 F Street, NE, Washington, DC 20002 |
| E. NAME OF SELLER: | Halbert T. Blue and Rose M. Blue and Joanne Blue |
| ADDRESS: | 1001 F Street, NE, Washington, DC 20002 |
| F. NAME OF LENDER: | New Century Mortgage Corporation |
| ADDRESS: | 18400 Von Karman, Ste 1000, Irvine, CA 92612 |
| G. PROPERTY ADDRESS: | 1001 F Street, NE, Washington, DC 20002 |
| H. SETTLEMENT AGENT: | Executive Title and Escrow L.L.C., Telephone: 301-341-6444 Fax: 301-341-1238 |
| PLACE OF SETTLEMENT: | 9500 Arena Drive, Suite 480, Largo, MD 20774 |
| I. SETTLEMENT DATE: | 04/27/2004 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 430,000.00 | 401. Contract sales price | 430,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 20,835.80 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 450,835.80 | **420. GROSS AMOUNT DUE TO SELLER** | 430,000.00 |
| **200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | 43,000.00 | 501. Excess Deposit (see instructions) | 43,000.00 |
| 202. Principal amount of new loans | 387,000.00 | 502. Settlement charges to seller (line 1400) | 7,075.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff:30910806 | 315,485.20 |
| | | Ocwen Federal Bank | |
| 205. | | 505. | |
| 206. | | 506. Release Fee | 225.00 |
| | | Executive Title and Escrow L.L. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes    04/01/04 to 04/27/04 | 107.47 | 510. City/town taxes    04/01/04 to 04/27/04 | 107.47 |
| 213. | | 513. Water Escrow | 450.00 |
| 214. SELLER CREDIT | 17,500.00 | 514. SELLER CREDIT | 17,500.00 |
| 215. | | 515. MISC/BILL | 27,000.00 |
| 216. | | 516. MISC/BILL | 4,000.00 |
| 217. | | 517. ESCROW | 8,000.00 |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 447,607.47 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 422,842.6 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 450,835.80 | 601. Gross amount due to seller (line 420) | 430,000.00 |
| 302. Less amounts paid by/for borrower (line 220) | 447,607.47 | 602. Less reduction amount due seller (line 520) | 422,842.6 |
| **303. CASH FROM BORROWER** | 3,228.33 | **603. CASH TO SELLER** | 7,157.3 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on the 401 above constitutes the Gross Proceeds of this transaction.

You are required by law to provide the settlement agent (Encl. Tax ID No. _____ ) with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

TIN: ___ - ___ - ___ / ___ - ___ - ___    SELLER(S) SIGNATURE(S): _____ / _____

SELLER(S) NEW MAILING ADDRESS: _____

SELLER(S) PHONE NUMBERS: _____ (H) _____ (W)

Form HUD-1 (3/86) ~ref Hanheo~k 4..

Previous editions are obsolete

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
## SETTLEMENT STATEMENT

File Number: 04-435
TitleExpress Settlement System

PAGE 2

| L. SETTLEMENT CHARGES | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $430,000.00 = | | | | |
| Division of commission (line 700) as follows: | | | | |
| 701. $ | to | | | |
| 702. $ | to | | | |
| 703. Commission paid at Settlement | | | | |
| 704. Administrative Fee | | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | |
| 801. Loan Origination Fee | 2.000 % Town and Country Mortgage | | 7,740.00 | |
| 802. Loan Discount | % | | | |
| 803. Appraisal Fee | to Town and Country Mortgage | | 350.00 | |
| 804. Credit Report | to Town and Country Mortgage | | 9.00 | |
| 805. UNDERWRITING FEE | to New Century Mortgage Corporation | | 350.00 | |
| 806. DOCUMENT FEE | to New Century Mortgage Corporation | | 359.00 | |
| 807. TAX SERVICE FEE | to New Century Mortgage Corporation | | 78.00 | |
| 808. FLOOD CERTIFICATION | to New Century Mortgage Corporation | | 11.20 | |
| 809. PROCESSING FEE | to Town and Country Mortgage | | 600.00 | |
| 810. | | | | |
| 811. | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | |
| 901. Interest From 04/27/2004 to 05/01/2004 @$ 63.6200 /day 4 Days | | | 254.48 | |
| 902. Mortgage Insurance Premium for to | | | | |
| 903. Hazard Insurance Premium for to STATE FARM (P.O.C.) 1,288.00 Buyer | | | | |
| 904. | | | | |
| 905. | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | | | | |
| 1001. Hazard Insurance | 2 mo. @ $ 101.50 /mo | | 203.00 | |
| 1002. Mortgage Insurance | mo. @ $ /mo | | | |
| 1003. City Property Taxes | 2 mo. @ $ 209.06 /mo | | 418.12 | |
| 1004. County Property Taxes | mo. @ $ /mo | | | |
| 1005. Annual Assessments | mo. @ $ /mo | | | |
| 1009. Aggregate Analysis Adjustment | | | 0.00 | 0.00 |
| **1100. TITLE CHARGES** | | | | |
| 1101. Settlement or closing fee | to Executive Title and Escrow L.L.C. | | 175.00 | 250.00 |
| 1102. Abstract or title search | to LKW Title and Abstract Service, LLC | | 255.00 | |
| 1103. Title examination | to Executive Title and Escrow L.L.C. | | 325.00 | |
| 1104. Title insurance binder | to Executive Title and Escrow L.L.C. | | 75.00 | |
| 1105. Document Preparation | to Executive Title and Escrow L.L.C. | | | 150.00 |
| 1106. Notary Fees | | | | |
| 1107. Attorney's fees | to Lawrence O. Elliott, Jr. Esq. | | 100.00 | |
| (includes above items No: ) | | | | |
| 1108. Title Insurance | to Old Republic National Title Insurance Co. | | 2,378.00 | |
| (includes above items No: ) | | | | |
| 1109. Lender's Policy | 387,000.00 - 1,522.96 | | | |
| 1110. Owner's Policy | 430,000.00 - 855.04 | | | |
| 1111. Judgment Search | to Property Insight | | 25.00 | |
| 1112. | | | | |
| 1113. Courier/Overnight | to Executive Title and Escrow L.L.C. | | 65.00 | 65.00 |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | |
| 1201. Recording Fees Deed $ 40.00 ; Mortgage $ 250.00 ; Release $ 160.00 | | | 290.00 | 160.00 |
| 1202. City Transfer Tax | Deed $8,450.00 ; Mortgage $ | | 3,225.00 | 3,225.00 |
| 1203. City Recordation Tax | Deed $6,450.00 ; Mortgage $ | | 3,225.00 | 3,225.00 |
| 1204. Construction Tax | Deed $ ; Mortgage $ | | | |
| 1205. | | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | |
| 1301. Survey | to Duley and Associates, Inc. | | 275.00 | |
| 1302. Pest Inspection | | | | |
| 1303. CLEAL LIEN | to DC TREASURER | | 50.00 | |
| 1304. | | | | |
| 1305. | | | | |
| 1306. | | | | |
| 1307. | | | | |
| 1308. | | | | |
| **1400. TOTAL SETTLEMENT CHARGES** (enter on lines 103, Section J and 502, Section K) | | | 20,835.80 | 7,075.0 |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Brenda D. Cenew
161783272

Robert T. Blue                    Rose N. Blue                    Jeanine Blue

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18: U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

By:_____

# EXHIBIT

# 3

LT1-5-2004135540-1

Prepared by: ALETIYA S TARVADI
Ocwen Federal Bank FSB
The Forum, Suite 105
1665 Palm Beach Lakes Blvd.
West Palm Beach, Florida 33401
Loan Number: 30910806 0603 S

LT2-0-0-1

## DEED OF RELEASE
### WASHINGTON D.C.

Made on this date: AUGUST 9, 2004 .

WHEREAS, the debt described in that one certain Deed of Trust dated MAY 24, 2001 and recorded _6/1/02_ , as instrument No. _2001049532_ among the Land Records of the District of Columbia, has been fully discharged as evidenced by the Paid and Cancelled promissory note having been exhibited to the undersigned Sole Substitute Trustee;

THEREFORE, in consideration of One Dollar ($1.00) , the undersigned Sole Substitute Trustee under the aforementioned Deed of Trust, does hereby grant and release unto HALBERT T. BLUE, JOANNE BLUE AND ROSE M. BLUE, his/her/heirs and assigns, the land and premises situate in the District of Columbia, and described as follows:       LOT: 18      SQUARE: 961
AP # : LOT 18, TAX MAP 961
PROPERTY ADDRESS : 1001 F STREET N.E., WASHINGTON, DC
LEGAL DESCRIPTION:

All that piece or parcel of land, together with the improvements, rights, privileges and appurtenances to the same belonging, situate in the District of Columbia, described as follows:

Lot 18 in Vincent W. Kramer's Subdivision of Lots in Square 961 as per plat recorded in the office of the surveyor for the District of Columbia in Liber 75 at folio 55 subject to a perpetual right of way over the rear 12 feet of said lot numbered 18 for the use and benefit of lots numbered 19, 20 and 21 in said subdivision.

BEING the same property conveyed unto Halbert T. Blue, Rose M. Blue, and Joanne Blue, as joint tenants with common law right of survivorship, by Deed dated November 24, 2000, recorded as instrument number 8258 among the land records of the District of Columbia.

The improvements thereon being known as 1001 F Street, N.E., Washington, DC.

WITNESS his hand and seal on AUGUST 9, 2004 .

OCWEN FEDERAL BANK FSB

BY:_____
NAME: Scott W. Anderson
TITLE:  Substitute Trustee and Senior Vice President

STATE FLORIDA              )
                           )SS.
COUNTY PALM BEACH          )

This instrument was acknowledged before me, the undersigned Notary Public, on AUGUST 9, 2004 , by Scott W. Anderson, the Senior Vice President of **Ocwen Federal Bank FSB.**

Kevin Magyar
My Commission DD197867
Expires March 27 2007

Notary Public

When Recorded Mail To:
Financial Dimensions, Inc.
1400 Lebanon Church Road
Pittsburgh, PA 15236        200673

Doc# 2004135540
Book:
Page:
Filed & Recorded 09/30/2004 10:58:45 AM
LARRY TODD
RECONDLR OF DEEDS
WASHINGTON D.C. RECORDER OF DEED.
RECORDING                    $   20.00
SURCHARGE                    $    6.50

Doc# 2004135540 Fees:$26.50
09/30/2004    10:58AM Pages 1
Filed & Recorded in Official Records of
WASH DC RECORDER OF DEEDS LARRY TODD

$    20.00
$     6.50

RECORDING
SURCHARGE

# EXHIBIT

# 4


## This Deed, made this **29th** day of **September, 2005,** by and between Brenda D. Carew, party of the first part, and Joanne Blue and Edna Robinson, parties of the second part.

WITNESSETH, that in consideration of the sum of FIVE HUNDRED FIFTY FIVE THOUSAND AND 00/100 DOLLARS (**$555,000.00**), the party of the first part does hereby grant unto the parties of the second part, in fee simple, as joint tenants with the right of survivorship, all that piece or parcel of land, together with the improvements, rights, privileges and appurtenances to the same belonging, situate in the District of Columbia, described as follows, to wit:

*See Attached Exhibit A*

AND the said party of the first part covenants that he will warrant specially the property hereby conveyed; and that he will execute such further assurances of said land as may be requisite.

WITNESS the hand and seal the day and year first hereinbefore written.

IN PRESENCE OF:

_____          _____  {SEAL}
                                                                    **Brenda D. Carew**

State of MD, Prince George's Co.
~~DISTRICT OF COLUMBIA~~

I, Lauren Clift , a Notary Public, in and for the jurisdiction aforesaid, do hereby certify that Brenda D. Carew, who is personally well known to me as the grantor in, and the person who executed the foregoing and annexed deed, bearing the date of **September 29, 2005,** personally appeared before me in the said District and acknowledged the said deed to be his act and deed.

Given under my hand and seal this **29th** day of **September, 2005.**

_____
Notary Public

My Commission Expires: _____

AFTER RECORDING MAIL TO:              GRANTEES ADDRESS:
**Executive Title and Escrow L.L.C.**      **1001 F Street NE**
**9500 Arena Drive**                           **Washington, DC 20002**
**Suite 480**
**Largo, MD 20774**

## Exhibit A

LOT 18 IN VINCENT W. KRAMER'S SUBDIVISION OF LOTS IN SQUARE 961 AS
PER PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT
OF COLUMBIA IN LIBER 75 AT FOLIO 55 SUBJECT TO A PERPETUAL RIGHT
OF WAY OVER THE REAR 12 FEET OF SAID LOT NUMBERED 18 FOR THE USE
AND BENEFIT OF LOTS NUMBERED 19, 20 AND 21 IN SAID   IN SAID
SUBDIVISION.
PROPERTY ADDRESS:1001 F STREET N.E WASHINGTON DC 20002
PROPERTY TAX ID NUMBER:SQUARE 0961 LOT 0018

```
RECORDING
SURCHARGE
RECORDATION TAX FEE    $    20.00
TRANSFER TAX FEE       $     8.50
                       $  6,050.00
                       $  6,050.00

Doc# 2005146519 Fees:$12126.50
10/17/2005   8:41AM Pages 2
Filed & Recorded in Official Records c
WASH DC RECORDER OF DEEDS LARRY TODD
```

# EXHIBIT

# 5

HAZARD INSURANCE AUTHORIZATION & REQUIREMENTS

| | | |
|---|---|---|
| Lender: | FREMONT INVESTMENT & LOAN | |
| | | Date: September 29, 2005 |
| | 2727 E IMPERIAL HIGHWAY | |
| | BREA, CA 92821 | Application No.: 921000278868 |
| Escrow Co.: | EXECUTIVE TITLE & ESCROW | Escrow No.: 05-860RTL |
| | 9500 ARENA DR #480 | |
| | LARGO | Property Address 1001 F ST    NE, |
| | | WASHINGTON, DC  20002 |
| Borrower: | JOANNE BLUE | |
| | EDNA ROBINSON | |

Listed below are your Lender's policies and procedures, and minimum requirements, for the Hazard Insurance which must be provided covering

# APPRAISAL NOTICE

This notice is given in conjunction with your request for a loan secured by real property on which an appraisal will be obtained.

---

### NOTICE

YOU HAVE A RIGHT TO A COPY OF THE APPRAISAL REPORT USED IN CONNECTION WITH YOUR APPLICATION FOR CREDIT. IF YOU WISH TO RECEIVE A COPY, PLEASE WRITE TO US AT THE FOLLOWING ADDRESS:

        FREMONT INVESTMENT & LOAN

        1065 N. PACIFICENTER DRIVE
        ANAHEIM, CA 92806
        Attn: Processing Department

PLEASE GIVE US THE FOLLOWING INFORMATION: YOUR NAME, ADDRESS, AND ANY PROPERTY INFORMATION WHICH WILL HELP US PROVIDE THE APPRAISAL.

---

PLEASE COMPLETE RECEIPT OF THIS NOTICE BY SIGNING BELOW.

I/We have received the above referenced notice under the Equal Credit Opportunity Act: Regulation B.

| | | |
|---|---|---|
| _Joanne Blue_ 9/29/05 | | _Edna Robinson_ 9/29/05 |
| Borrower's Signature            Date | | Co-Borrower's Signature            Date |
| JOANNE BLUE | | EDNA ROBINSON |
| Print or Type Borrower's Name | | Print or Type Co-Borrower's Name |
| | | |
| Co-Borrower's Signature            Date | | Co-Borrower's Signature            Date |
| | | |
| Print or Type Borrower's Name | | Print or Type Co-Borrower's Name |

Loan Number:      1000278868
Property Address:  1001 F ST    NE,
                 WASHINGTON, DC  20002

ITAPPNOT REV 10/24/01

# EXHIBIT

# 6

A. Settlement Statement

U.S. Department of Housing and Urban Development

| B. Type of Loan | | | | | | OMB No. 2502-0265 REV. HUD-1 (3/86) | |
|---|---|---|---|---|---|---|---|
| 1. ☐FHA | 2. ☐FmHA | 3. ☐Conv. Unins. | 6. File Number | | 7. Loan Number | 8. Mortgage Insurance Case Number | |
| 4. ☐VA | 5. ☐Conv. Ins. | | 05-860RTL | | 921000278868 | | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals. WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

TitleExpress Settlement System

D. NAME OF BORROWER: Joanne Blue and Edna Robinson
ADDRESS: 1001 F Street NE, Washington, DC 20002

E. NAME OF SELLER: Brenda D. Carew
ADDRESS: 1001 F Street NE, Washington, DC 20002

F. NAME OF LENDER: Fremont Investment & Loans
ADDRESS: ISAOA and/or ATIMA, 1065 N. Pacificenter Drive, Anaheim, CA 92806

G. PROPERTY ADDRESS: 1001 F Street NE, Washington, DC 20002

H. SETTLEMENT AGENT: Executive Title and Escrow L.L.C., Telephone: 301-341-6444 Fax: 301-341-1238
PLACE OF SETTLEMENT: 9500 Arena Drive, Suite 480, Largo, MD 20774

I. SETTLEMENT DATE: 09/29/2005

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER** | | **400. GROSS AMOUNT DUE TO SELLER** | |
| 101. Contract sales price | 555,000.00 | 401. Contract sales price | 555,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 29,232.57 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes    04/02/05 to 09/29/05 | 32.25 | 406. City/town taxes    04/02/05 to 09/29/05 | 32.25 |
| 109. Release Fee | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 584,264.82 | **420. GROSS AMOUNT DUE TO SELLER** | 555,032.25 |
| **200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER** | |
| 201. Deposit or earnest money | 55,500.00 | 501. Excess Deposit (see instructions) | 55,500.00 |
| 202. Principal amount of new loans | 444,000.00 | 502. Settlement charges to seller (line 1400) | 6,385.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff:0001498691 | 403,739.55 |
| | | New Century Mortgage Corporati | |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 213. SELLER HED 2ND LOAN | 55,500.00 | 513. SELLER HED 2ND LOAN | 55,500.00 |
| 214. | | 514. WATER ESCROW | 350.00 |
| 215. | | 515. RELEASE FEE | 225.00 |
| 216. BROKER CREDIT | 5,000.00 | 516. | |
| 217. | | 517. | |
| 218. SELLER CONTRIBUTION | 24,264.82 | 518. SELLER CONTRIBUTION | 24,264.82 |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 584,264.82 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 545,964.37 |
| **300. CASH AT SETTLEMENT FROM OR TO BORROWER** | | **600. CASH AT SETTLEMENT TO OR FROM SELLER** | |
| 301. Gross amount due from borrower (line 120) | 584,264.82 | 601. Gross amount due to seller (line 420) | 555,032.25 |
| 302. Less amounts paid by/for borrower (line 220) | 584,264.82 | 602. Less reduction amount seller (line 520) | 545,964.37 |
| **303. CASH FROM BORROWER** | 0.00 | **603. CASH TO SELLER** | 9,067.88 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on line 401 above constitutes the Gross Proceeds of this transaction.

SELLER INSTRUCTIONS: If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide the settlement agent (Fed. Tax ID No: _____) with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

TIN: _____ / _____   SELLER(S) SIGNATURE(S): _____ / _____

SELLER(S) NEW MAILING ADDRESS: _____

SELLER(S) PHONE NUMBERS: _____ (H) _____ (W)

SETTLEMENT STATEMENT
REV HUD-1 (3/86)

TitleExpress Settlement System

| L. SETTLEMENT CHARGES | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $555,000.00 = | | | |
| Division of commission (line 700) as follows: | | | |
| 701. $ to | | | |
| 702. $ to | | | |
| 703. Commission paid at Settlement | | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | |
| 801. Loan Origination Fee % Fremont Investment & Loans | | 489.00 | |
| 802. Loan Discount % | | | |
| 803. Appraisal Fee to Town and Country Mortgage (P.O.C.) 350.00 Buyer | | | |
| 804. Credit Report to Town and Country Mortgage | | 20.00 | |
| 805. BROKER FEE to Town and Country Mortgage | | 13,979.00 | |
| 806. UNDERWRITING FEE to Fremont Investment & Loans | | 405.00 | |
| 807. TAX SERVICE FEE to LANDAMERICA TAX AND FLOOD SERVICES | | 60.00 | |
| 808. FLOOD CERT FEE to LANDAMERICA TAX AND FLOOD SERVICES | | 9.50 | |
| 809. PROCESSING FEE to Town and Country Mortgage | | 600.00 | |
| 810. | | | |
| 811. | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | |
| 901. Interest From 09/29/2005 to 10/01/2005 @$ 76.6400 /day 2 Days | | 153.28 | |
| 902. Mortgage Insurance Premium for to | | | |
| 903. Hazard Insurance Premium for to STATE FARM | | 1,201.00 | |
| 904. | | | |
| 905. | | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | | | |
| 1001. Hazard Insurance 3 mo. @ $ 100.09 /mo | | 300.27 | |
| 1002. Mortgage Insurance mo. @ $ /mo | | | |
| 1003. City Property Taxes mo. @ $ 392.46 /mo | | | |
| 1004. County Property Taxes 4 mo. @ $ 392.47 /mo | | 1,569.88 | |
| 1005. Annual Assessments mo. @ $ /mo | | | |
| 1009. Aggregate Analysis Adjustment to Fremont Investment & Loans | | -392.61 | 0.00 |
| **1100. TITLE CHARGES** | | | |
| 1101. Settlement or closing fee to Executive Title and Escrow L.L.C. | | 175.00 | 175.00 |
| 1102. Abstract or title search to TJ Abstracts | | 280.75 | |
| 1103. Title examination to Executive Title and Escrow L.L.C. | | 570.00 | |
| 1104. Title insurance binder to Executive Title and Escrow L.L.C. | | 75.00 | |
| 1105. Document Preparation | | | |
| 1106. Notary Fees | | | |
| 1107. Attorney's fees to Lawrence O. Elliott, Jr. Esq. | | 100.00 | |
| (includes above items No: ) | | | |
| 1108. Title Insurance to Old Republic National Title Insurance Co. | | 2,982.50 | |
| (includes above items No: ) | | | |
| 1109. Lender's Policy 444,000.00 - 1,568.00 | | | |
| 1110. Owner's Policy 555,000.00 - 1,414.50 | | | |
| 1111. Judgment Search to Property Insight | | 25.00 | |
| 1112. | | | |
| 1113. Courier/Overnight to Executive Title and Escrow L.L.C. | | 65.00 | 65.00 |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | |
| 1201. Recording Fees Deed $40.00 ; Mortgage $ 250.00 ; Release $ | | 250.00 | 40.00 |
| 1202. City Transfer Tax Deed $6,105.00 ; Mortgage $ | | 3,052.50 | 3,052.50 |
| 1203. City Recordation Tax Deed $6,105.00 ; Mortgage $ | | 3,052.50 | 3,052.50 |
| 1204. Construction Tax Deed $ ; Mortgage $ | | | |
| 1205. | | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | |
| 1301. Survey to Duley and Associates, Inc. | | 210.00 | |
| 1302. Pest Inspection | | | |
| 1303. | | | |
| 1304. | | | |
| 1305. | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. | | | |
| **1400. TOTAL SETTLEMENT CHARGES** (enter on lines 103, Section J and 502, Section K) | | 29,232.57 | 6,385.00 |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of this HUD-1 Settlement Statement. I agree to further adjustments in the event of errors or omissions and indemnify and hold harmless Settlement Agent against such error or omissions.

Johnnie Blue
5799005996

Edna Robinson
145542670

Brenda D. Carew

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18: U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

By: _____
DATE

# EXHIBIT

# 7

Return To:
FREMONT INVESTMENT & LOAN
P.O. BOX 34078
FULLERTON, CA 92834-34078

Executive Title and Escrow ...L.C.
9500 Arena Dr. Suite 480
Largo, MD 20774

*File 05-860*

*Old Republic National*

[Space Above This Line For Recording Data]

# DEED OF TRUST

*Purchase Money*     MIN 1001944-1000278868-0



LT1-5-2005148520-1

LT2-0-0-19

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "**Security Instrument**" means this document, which is dated **September 29, 2005**
together with all Riders to this document.

(B) "**Borrower**" is **JOANNE BLUE AND EDNA ROBINSON**

Borrower's address is **1001 F ST     NE,**
**WASHINGTON, DC 20002**                    . Borrower is the trustor under this Security Instrument.

(C) "**Lender**" is **FREMONT INVESTMENT & LOAN**

Lender is a **CORPORATION**
organized and existing under the laws of **CALIFORNIA**
Lender's address is
**2727 E IMPERIAL HIGHWAY, BREA CA 92821**

(D) "**Trustee**" is     **EXECUTIVE TITLE & ESCROW**

Trustee's address is
**9500 ARENA DR #480**
**LARGO, MD 20774**

**DISTRICT OF COLUMBIA**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**

-6A(DC) (0205)     Form 3009 1/01
(rev. 5/02)

Page 1 of 15     Initials: *JB E.R.R.*



VMP MORTGAGE FORMS - (800)521-7291

*2V*
*mm*

**Exhibit A**

LOT 18 IN VINCENT W. KRAMER'S SUBDIVISION OF LOTS IN SQUARE 961 AS
PER PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT
OF COLUMBIA IN LIBER 75 AT FOLIO 55 SUBJECT TO A PERPETUAL RIGHT
OF WAY OVER THE REAR 12 FEET OF SAID LOT NUMBERED 18 FOR THE USE
AND BENEFIT OF LOTS NUMBERED 19, 20 AND 21 IN SAID  IN SAID
SUBDIVISION.
PROPERTY ADDRESS:1001 F STREET N.E WASHINGTON DC 20002
PROPERTY TAX ID NUMBER:SQUARE 0961 LOT 0018





(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: JB  E. R. R.

-6A(DC) (0205)    Page 2 of 15    Form 3009 1/01 (rev. 5/02)

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) **"Note"** means the promissory note signed by Borrower and dated **September 29, 2005**
The Note states that Borrower owes Lender **Four Hundred Forty-Four Thousand and No/100 --------------------------------------------------** Dollars
(U.S. $      **444,000.00**      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **October 1, 2035**

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the District of Columbia:
**ATTACHED HERETO AND MADE A PART THEREOF**

Parcel ID Number: **09610018**                                        which currently has the address of
**1001 F ST    NE**                                                                                    [Street]
Washington, District of Columbia **20002**          [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

Initials: 

-6A(DC) (0205)                          Page 3 of 15                          Form 3009 1/01 (rev. 5/02)

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all

-6A(DC) (0205)                    Page 4 of 15                    Initials: _G.R.R._    Form 3009 1/01 (rev. 5/02)

Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien

-6A(DC) (0205)                    Page 5 of 15        Initials: JB E. R.R.        Form 3009 1/01 (rev. 5/02)



which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance

Initials: JB E. R. R.



which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials: JB  E.R.R.

-6A(DC) (0205)                                Page 8 of 15                                Form 3009 1/01 (rev. 5/02)



## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

Joanne Blue, et. al.                          )
1001 F Street, NE                            )
Washington, D.C. 20002                       )
      Plaintiffs,              )
                         )
      v.                          )   CA No.:     **0002679-08**
                         )
Freemont Investment & Loan, et. al.          )   DEMAND FOR JURY TRIAL
2727 E. Imperial Highway                     )
Brea, California 92821                       )
      Defendants.              )
_____)

## MOTION FOR PRELIMINARY INJUNCTION

**COMES NOW**, plaintiffs, Joanne Blue, Edna Robinson, Halbert Blue and Rose Blue, by and through counsel, William C. Johnson, Jr., Esq., moves this honorable Court for a preliminary injunction pursuant to D.C. Super. Ct. R 65. The grounds for this Motion are more particularly set forth in the accompanying Verified Bill of Complaint.

Plaintiff moves this Court to issue a Preliminary Injunction, restraining and enjoining the Defendants, their agents, servants, and all other persons acting in concert and participation with them from the following activity: 1) foreclosing and evicting the plaintiffs from the subject property of this matter, and 2) from enforcing this matter to gain possession in the Landlord & Tenant Branch. The grounds for this Motion are more particularly set forth in the accompanying Verified Bill of Complaint and Memorandum of Points and Authorities accompanying motion for temporary restraining order.

WHERFORE, for the foregoing reasons, the plaintiffs demands that a preliminary injunction be granted in their favor pursuant to an adversary hearing in this matter.


Date:  April 7, 2008                         Respectfully submitted,

                                               William Johnson, Esq.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | | |
|---|---|---|
| Joanne Blue, et. al. | ) | |
| 1001 F Street, NE | ) | |
| Washington, D.C. 20002 | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CA No.: |
| | ) | |
| Freemont Investment & Loan, et. al. | ) | DEMAND FOR JURY TRIAL |
| 2727 E. Imperial Highway | ) | |
| Brea, California 92821 | ) | |
| Defendants. | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES

1.     D.C. Super. Ct. R 65

Date:  April 7, 2008

William C. Johnson, Jr.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

Joanne Blue, et. al.                              )
1001 F Street, NE                                 )
Washington, D.C. 20002                            )
        Plaintiffs,                     )
                  )
       v.                                   )    CA No.:
                  )
Freemont Investment & Loan, et. al.               )    DEMAND FOR JURY TRIAL
2727 E. Imperial Highway                          )
Brea, California 92821                            )
        Defendants.                     )
_____)

## PRELIMINARY INJUNCTION ORDER

**UPON CONSIDERATION** of the foregoing Motion for a Preliminary
Injunction and the verified Bill of Complaint, the Court having found the plaintiff
Carolyn Huger will suffer irreparable harm if the Preliminary Injunction is not
issued in that Plaintiff's property will be irreparably damaged, and the Court
having found that it is manifest that the harm to plaintiff will be irreparable and is
not susceptible to monetary compensation, it is, this ___ day of _____,
2008 at _____ a.m./p.m., by the Superior Court for the District of Columbia.

    ORDERED that defendant Fremont Investment & Loans, Inc. and its
agents, servant and employees are enjoined and restrained from selling the real
property located at 1001 F St. NE, Washington, D.C. 20002

    ORDERED that this Preliminary Injunction, unless extended by further
court order, shall expire on this ____ day of _____, 2008; and it is further

    ORDERED that a party or any person affected by this Order may apply for
a modification or dissolution of this Court may prescribe.


                                         _____
                                            Judge

(DC Bar No. 470314)
1229 15th St., N.W.
Washington, D.C. 20005
Phone: (202) 483-0808

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 7, 2007, a copy of the foregoing Motion for

Preliminary Injunction and Memorandum of Points and Authorities was served via first

class mail to the following:

Freemont Investment & Loan
2727 E. Imperial Highway
Brea, California 92821

Executive Title & Escrow
9500 Arena Drive #480
Largo, Maryland 20774

Town and Country Mortgage and Financial
Services, Inc.
1300 Mercantile Lane
Suite 150
Largo, Maryland 20776

Dennis Bishop
1300 Mercantile Lane
Suite 150
Largo, Maryland 20776

Brenda Carew
10423 Beacon Ridge Drive
Mitchellville, Maryland 20721

Date:  April 7, 2008

William C. Johnson, Jr.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

Joanne Blue, et. al.                          )
1001 F Street, NE                             )
Washington, D.C. 20002                        )
           Plaintiffs,          )
                        )
      v.                                  )    CA No.:
                        )
Freemont Investment & Loan, et. al.           )    DEMAND FOR JURY TRIAL
2727 E. Imperial Highway                      )
Brea, California 92821                         )
           Defendants.          )
_____)

## NOTICE OF HEARING

    PLEASE TAKE NOTICE that on _____ at _____ am or as soon

thereafter as Counsel may be heard, Plaintiff will move the Court to grant Plaintiff's

Motion for Temporary Restraining Order and Preliminary Injunction filed by Plaintiff on

_____, 2008. The hearing will be held in Room 4220, 4th Floor at Superior Court

of the District of Columbia. This serves as your notice for the hearing as Defendants.

The Defendants have also been notified by fax and phone on _____.

    This notice is being served with the Summons, Complaint, Motion for

Preliminary Injunction and Motion for Temporary Restraining Order. A copy will also be

served on the registered agents of the corporate Defendants.


                    Respectfully Submitted,


                    William C. Johnson, Esq.
                    (DC Bar No. 470314)
                    1229 15th St., NW

Washington, D.C. 20005
Tel: (202) 483-0808
Fax: (202) 483-0909
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 7, 2007, a copy of the foregoing was sent

via first class mail to the following:

Freemont Investment & Loan
2727 E. Imperial Highway
Brea, California 92821

Executive Title & Escrow
9500 Arena Drive #480
Largo, Maryland 20774

Town and Country Mortgage and Financial
Services, Inc.
1300 Mercantile Lane
Suite 150
Largo, Maryland 20776

Dennis Bishop
1300 Mercantile Lane
Suite 150
Largo, Maryland 20776

Brenda Carew
10423 Beacon Ridge Drive
Mitchellville, Maryland 20721

Date: April 7, 2008

William C. Johnson, Jr.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_Joanne Blue, et al_
Plaintiff

v.                                        Civil Action No.  08 0729

_Fremont Investment + Loan, et al_
Defendant

APR 2 8 2008

The above entitled action, removed from the Superior Court for the District of Columbia,

has been filed and assigned to Judge _____KOLLAR-KOTELLY, J.C.KK_____. All counsel and/or pro se

litigants must include on any subsequent pleadings both the civil action number and the initials

of the judge assigned to this action.  (See preceding sentence for judge's initials).

Pursuant to Local Rule 83.2(a)(b), an attorney must be a member in good standing of the

bar of this Court to appear, file papers or practice.  To assist the Clerk's Office in properly

recording all counsel of record, counsel for all parties must enter their appearance in accordance

with our Local Rule 83.6(a).  Timely compliance with this requirement will enable the Clerk's

Office to ensure prompt delivery of notices and orders.

Finally, your attention is called to Local Rule 16.3, Duty to Confer.  This rule clearly

spells out the duty of counsel, as well as pro se litigants, to confer and report back to the Court

on a wide range of questions.

NANCY MAYER-WHITTINGTON, CLERK

By _____
Deputy Clerk

cc: _William Johnson, Jr._

929A
Rev. 7/02