UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOANNE BLUE, *et al.*,<br><br>    Plaintiffs,<br><br>    v.<br><br>FREMONT INVESTMENT & LOAN, *et al.*,<br><br>    Defendants. | Civil Action No. 08-729 (CKK) |

**MEMORANDUM OPINION**
(June 23, 2008)

Plaintiffs Joanne Blue, Edna Robinson, Halbert Blue, and Rose Blue (collectively, "Plaintiffs") filed a Complaint on April 4, 2008, in the Superior Court for the District of Columbia, seeking damages and other relief against Defendants Fremont Investment & Loan ("Fremont"), Executive Title & Escrow ("Executive"), Town and Country Mortgage and Financial Services, Inc. ("Town & Country"), and Dennis Bishop, based on two allegedly fraudulent home loan transactions. Fremont removed the case to this Court on April 28, 2008, and filed a Motion to Dismiss on May 12, 2008.[1] After carefully reviewing the submissions of Plaintiffs and Fremont, applicable case law and statutory authority, and the record of the case as a whole, the Court shall grant-in-part and deny-without-prejudice-in-part Fremont's [5] Motion to Dismiss. For the reasons set forth below, Counts I, IV, V, VI, VII, and VIII of Plaintiffs' Complaint shall be dismissed against Fremont, all claims asserted by Halbert and Rose Blue shall be dismissed against Fremont, and Plaintiffs shall be granted leave to amend Counts II and III.

---

[1] The Motion to Dismiss has been filed on Fremont's own behalf, and not on behalf of any of the other Defendants in this case. *See* Def.'s Reply at 2 n.1.

# I. BACKGROUND

*A.     Factual Background*

The following allegations are adopted from Plaintiffs' Complaint and must be treated as true for purposes of Fremont's Motion to Dismiss. *See Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006). Halbert and Rose Blue owned real property located in Washington, D.C., that twice faced foreclosure. Compl. ¶¶ 15, 20. Plaintiffs staved off foreclosure by engaging in two transactions with Dennis Bishop, the CEO and President of Town and Country. *Id.* ¶¶ 12, 15-27. Plaintiffs allege that both of these transactions were fraudulent. *Id.*

The first transaction occurred in April 2004. *Id.* ¶ 15. Dennis Bishop approached Plaintiffs and offered to stop the impending foreclosure on their property if they signed a deed to secure a new loan. *Id.* Plaintiffs signed a deed to sell their property to Brenda Carew, a consultant and broker of Town and Country. *Id.* ¶¶ 13, 17. Ms. Carew, utilizing Town & Country as a mortgage broker, obtained a loan from New Century Mortgage in the amount of $387,000 to purchase the property. *Id.* ¶ 18. The loan was used to pay off the existing mortgage of $308,000, and Plaintiffs received $8,000. *Id.* ¶ 19. The sales price was recorded as $430,000, and a fictitious $43,000 deposit was recorded in the closing documents. *Id.* ¶¶ 18, 22. Plaintiffs continued to occupy the property following this transaction and were unaware that the property had been sold to Ms. Carew. *Id.* ¶ 19. Fremont was not a party to this transaction. *Id.* ¶¶ 15-19.

The second transaction occurred on September 1, 2005. *Id.* ¶ 20. Plaintiffs began receiving foreclosure notices at the property in the name of Ms. Carew. *Id.* Dennis Bishop indicated that Plaintiffs would be given a loan to refinance their home to stop the foreclosure,

and he facilitated a sale from Ms. Carew to Joanne Blue and Edna Robinson.² *Id.* ¶ 22. Dennis Bishop arranged to have Fremont loan Joanne Blue and Edna Robinson $444,000 for this transaction. *Id.* The purchase price on the property was $555,000, and the closing documents included a fictitious deposit of $55,500. *Id.* Plaintiffs received no cash at closing, and Ms. Carew retained a second mortgage on the home in the amount of $55,500. *Id.* ¶ 23. Plaintiffs admit that they attended this closing but deny having applied for a loan from Fremont. *Id.* ¶¶ 20, 24, 25. As a result of these two transactions, Halbert and Rose Blue "had their property taken from them," and Joanne Blue and Edna Robinson "ended up with a mortgage note which exceeded their means to pay . . . ." *Id.* ¶¶ 26, 27.

    B.    *Procedural Background*

The Parties fail to describe what transpired in the almost two years after these transactions, but the record indicates that Plaintiffs' property was ultimately sold at a foreclosure sale to Fremont (a lienholder on the property by virtue of the second transaction described above) on July 9, 2007. *See* Def.'s Mot. at 3 n.2 & Ex. 1 (7/9/07 Deed of Trust). Fremont thereafter initiated eviction proceedings in the Landlord & Tenant Branch of the Superior Court for the District of Columbia against Joanne Blue and Edna Robinson.³ Def.'s Mot. at 4. On September 27, 2007, Joanne Blue, through counsel, filed a verified answer, asserted a plea of title, and raised four counterclaims against Fremont relating to the transactions described above: (1) violations of the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-

---

² Joanne Blue and Edna Robinson are the daughters of Halbert and Rose Blue. Compl. ¶ 15; Pls.' Opp'n at 3.

³ Neither Party provides the Court with the date this proceeding was initiated.

3901 *et seq.*; (2) common law fraud; (3) violations of the District of Columbia Mortgage Lender and Broker Act, D.C. Code § 26-1101 *et seq.*; and (4) violations of the District of Columbia Home Loan Protection Act, D.C. Code § 26-1151.01, *et seq. Id.*, Ex. 4 (9/27/07 Verified Answer, Plea of Title, and Counterclaims). The case was transferred to the Civil Actions Branch of the Superior Court on October 16, 2007. *Id.*, Ex. 5 (10/16/07 Notice of Certification to Civil Actions Branch). Fremont filed a Motion to Strike the Plea of Title and for the Entry of a Non-Redeemable Judgment for Possession on January 18, 2008. *Id.*, Ex. 2 at 1 (2/13/08 Order). The court granted Fremont's Motion on February 13, 2008, because Joanne Blue and Edna Robinson had "without justification or excuse, failed to file any opposition or response" to Fremont's Motion, and they had failed to make timely payments into the registry of the court subject to the court's protective order. *Id.* On February 19, 2008, the court denied Joanne Blue's *pro se* Motion to Vacate its February 13, 2008 Order because "a plea of title is 'contingent upon compliance with a protective order.'" *Id.*, Ex. 3 at 1-2 (quoting *Penny v. Penny*, 565 A.2d 587, 589 (D.C. 1989)).

      Plaintiffs filed the instant Complaint on April 4, 2008, reasserting their four counterclaims from the first Superior Court action along with four new grounds for relief (counts I, IV, V, and VI) based on common law civil conspiracy, the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* Plaintiffs simultaneously filed Motions for a Temporary Restraining Order and a Preliminary Injunction to prevent Fremont from enforcing the Superior Court's February 13, 2008 judgment for possession, and to block Plaintiffs' eviction from the subject property. *See* Pls.' Mot. for a Prelim. Inj. at 1; Pls.' Mot. for a TRO at 1-7.

Fremont removed this case on April 28, 2008. *See* Notice of Removal at 2-3. The Court thereafter held two conference calls with counsel for Plaintiffs and Fremont on May 1, 2008, and May 2, 2008, respectively. Fremont agreed to temporarily stay the enforcement of the judgment for possession to allow Plaintiffs' claims to be decided through a fully-briefed Motion to Dismiss, provided that Plaintiffs would (1) pay their undertaking into the registry of the Landlord and Tenant Branch of the D.C. Superior Court during the pendency of the Motion, and (2) provide Fremont with proof of insurance on the property. *See* [4] Joint Status Report dated May 8, 2008. Plaintiffs agreed to withdraw without prejudice their Motions for a Temporary Restraining Order and a Preliminary Injunction, subject to the conditions above, pending resolution of the instant Motion. *Id.*

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *accord Erickson v. Pardus*, 551 U.S. ___, 127 S. Ct. 2197, 2200 (2007) (per curiam). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id*. at 1964-65; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986). Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in

fact)." *Bell Atl. Corp.*, 127 S. Ct. at 1965 (citations omitted).

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

Where a complaint asserts a cause of action based on fraud, the pleader must identify the circumstances constituting the fraud or mistake with particularity. *See* Fed. R. Civ. P. 9(b). This heightened pleading standard ensures that the opposing parties have sufficient notice of the claims asserted against them, *see Antoine v. U.S. Bank Nat'l Ass'n*, Civ. A. No. 07-1518, 2008 U.S. Dist. LEXIS 32584 at * 9 (D.D.C. Apr. 22, 2008), and prevents parties from bringing fraud claims as "pretext for the discovery of unknown wrongs." *Kowal v. MCI Communs. Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994). Reading Rules 8 and 9(b) together, the D.C. Circuit has stated that a party pleading fraud must "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Id.* at 1278 (quoting *United States v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir.

1981)).

### III.  DISCUSSION

The Court shall first address which Plaintiffs have claims against Fremont, and then examine the eight counts included in Plaintiffs' Complaint in the context of Fremont's Motion to Dismiss.

    *A.     Parties With Claims Against Fremont*

It is undisputed that Plaintiffs Joanne Blue and Edna Robinson were parties to the loan agreement with Fremont, but that Halbert and Rose Blue were not. *See* Compl. ¶ 22 ("plaintiff[s] Joane [sic] Blue and Edna Robinson received an unsolicited loan from Fremont"). *See also* Def.'s Mot. at 4 ("[e]ach of the claims brought by the Plaintiffs [against Fremont] is premised upon Fremont's loan to Joanne Blue and Edna Robinson . . . Halbert Blue and Rose Blue were not parties to that transaction"); Pls.' Opp'n at 4 ("Fremont foreclosed on the loan to the plaintiffs Joan [sic] Blue and Edna Robinson"). The D.C. Court of Appeals has explained that "[i]t is an elementary matter of jurisprudence that an individual must have standing in order to maintain an action." *Burleson v. United Title & Escrow Co.*, 484 A.2d 535, 537 (D.C. 1983) (per curiam). In *Burleson*, the plaintiff sold his right to purchase a property to another purchaser, but nevertheless filed suit against the title company associated with a subsequent transaction on the property. *Id.* The court found that the plaintiff did not have standing to maintain his action against the title company because he lacked an interest in the subject property at the time of the transaction, and therefore there was "no injury . . . flowing from [the title company's] conduct." *Id.*

In the present case, Halbert and Rose Blue were not parties to the loan transaction with

Fremont because they allege that they sold their interest in the property to Brenda Carew prior to any transaction involving Fremont. *See* Compl ¶¶ 15-27. Accordingly, just as in *Burleson*, Halbert and Rose Blue lack standing to assert any of the claims in their Complaint against Fremont. Moreover, Fremont argued in its Motion that Halbert and Rose Blue lacked standing to assert claims against Fremont, *see* Def.'s Mot. at 4, and Plaintiffs' Opposition failed to address the point. In instances where "a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded." *See Fox v. Am. Airlines, Inc.*, 295 F. Supp. 2d 56, 58 (D.D.C. 2003), *aff'd*, 389 F.3d 1291 (D.C. Cir. 2004). Accordingly, the Court shall dismiss any claims asserted by Halbert and Rose Blue against Fremont.[4]

### B. Counts I, IV, V, and VI

Fremont argues that counts I, IV, V, and VI constitute compulsory counterclaims that should have been (but were not) raised in the Parties' Superior Court eviction proceedings.[5] *See*

---

[4] Plaintiffs' Opposition does argue that "all parties to this transaction knew, or should have known, of the mortgage fraud which has been alleged." Pls.' Opp'n at 2. To the extent this argument could be construed to suggest that Halbert and Rose Blue have standing to assert claims against Fremont, it must be rejected. Plaintiffs' Complaint does not allege that Fremont was involved in the first transaction on the subject property; rather, the Complaint alleges that Fremont only became involved with the property *after* Halbert and Rose Blue had sold their interest. *See* Compl. ¶ 18 (alleging that New Century Mortgage provided the loan involved with the transaction where Halbert and Rose Blue sold their interest in the property), *id.* ¶ 22 (alleging that Fremont provided the loan involved with the transaction where Joanne Blue and Edna Robinson purchased the property). Accordingly, Fremont's "knowledge" is irrelevant to damages that Halbert and Rose Blue may have suffered as a result of the first property transaction. While Halbert and Rose Blue may have claims against the other Defendants, this Opinion does not reach any issues associated with the validity or merits of claims asserted against any Defendant other than Fremont.

[5] For reasons that are entirely unclear, Fremont identifies these claims as those based on the Truth and Lending Act and the Real Estate Settlement Procedures Act, but omits reference to

Def.'s Mot. at 5. Fremont further argues that Plaintiffs are barred from raising these claims in this subsequent action. *Id.* The Court agrees.

Fremont's eviction proceeding involved Fremont, Joanne Blue, and Edna Robinson, and required the Superior Court to make a determination as to which party held proper title to the property. *See* Def.'s Mot., Ex. 2 at 1 (2/13/07 Order). Joanne Blue and Edna Robinson defended the action by arguing, *inter alia*, that Fremont's loan transaction was fraudulent, violated numerous statutes, and gave rise to multiple causes of action. *Id.*, Ex. 3 at 1-9 (9/27/07 Answer). These arguments are materially identical to those included in Plaintiffs' Complaint in this case, except that Plaintiffs now assert the following four additional claims arising out of their loan transaction with Fremont. Count I alleges the existence of a civil conspiracy and that Fremont issued a loan without Plaintiffs' consent. *See* Compl. ¶¶ 40-44. Counts IV and V allege violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, based on the failure of Fremont and the other Defendants to provide Plaintiffs with a disclosure statement reflecting the amount financed, finance charges, annual percentage rates, and other fees associated with the property transactions. *Id.* ¶¶ 63-72. Count VI alleges additional violations of the Truth in Lending Act and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, based on Defendants' failure to provide Plaintiffs with "correct Truth-in-Lending disclosure[s]." Compl. ¶¶ 73-81.

Whether a cause of action constitutes a compulsory counterclaim is governed by D.C.

---

Plaintiffs' civil conspiracy claim (even though Plaintiffs failed to assert that claim in the Superior Court proceedings). *See* Def.'s Mot. at 5. Because the same analysis applies to Plaintiffs' conspiracy and statutory claims, the Court assumes Fremont's omission in this regard was inadvertent.

Superior Court Rule of Civil Procedure 13(a) ("Rule 13(a)"), which provides that

> a pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of 3rd parties of whom the Court cannot acquire jurisdiction.

Rule 13(a). To determine whether a claim arises out of the same transaction or occurrence, courts examine, among other considerations, whether the claim involves the same parties, the same agreements, the same evidence, or whether it could give rise to an irreconcilable judgment. *See Pumpelly v. Cook*, 106 F.R.D. 238, 239 (D.D.C. 1985) (applying Federal Rule of Civil Procedure 13(a)).[6] Under D.C. law, where a plaintiff fails to raise a compulsory counterclaim, that claim is "lost forever." *Bronson v. Borst*, 404 A.2d 960, 963 (D.C. 1979).

In the present case, Plaintiffs' claims (as they pertain to Fremont) are directly related to Plaintiffs' defense in the Superior Court proceedings. Plaintiffs' claims also concern the validity and surrounding circumstances of the same loan transaction on which Fremont's interest in the property is based. On these facts, Plaintiffs' claims must be deemed to arise out of the same transaction or occurrence. *See Henderson v. Snider Bros., Inc.*, 439 A.2d 481, 485 (D.C. 1981) (en banc) (holding that plaintiffs could not raise a fraud claim arising out of a property transaction after failing to raise the claim in a foreclosure action because the "evidence necessary to support . . . [the] action for damages for fraud would have sufficed to establish a defense of fraud in the foreclosure action"). *See also Nat'l Housing P'ship v. Mun. Capital Appreciation*

---

[6] Because Federal Rule of Civil Procedure is materially identical to Superior Court Rule 13(a), federal court decisions interpreting the federal rule may be considered "persuasive authority" in interpreting the local rule. *See Hall v. George A. Fuller Co.*, 621 A.2d 848, 850 n.4 (D.C. 1993).

*Partners*, 935 A.2d 300, 322 (D.C. 2007) (finding that a claim was compulsory where it concerned a possible surplus stemming from a foreclosure sale); *Pomfret Farms Ltd. P'ship v. Pomfret Assocs.*, 811 A.2d 655, 659 (Vt. 2002) (applying a compulsory counterclaim rule identical to Rule 13(a) and finding that the plaintiff's misrepresentation claim was compulsory because it arose from the same property transaction that gave rise to the opposing party's claim for recovery on a mortgage note).

     Plaintiffs advance two arguments as to why their additional claims have not been waived. First, they argue that a claim cannot be considered compulsory unless there is "a full adjudication on the merits as to the claim or the claims must be procedurally dismissed with prejudice." Pls.' Opp'n at 8. Plaintiffs further argue that "no full adjudication upon the merits ha[s] been had at any level or forum in the instant matter." *Id.* To the extent Plaintiffs are arguing that their additional claims are not waived because they were not litigated on the merits or otherwise dismissed with prejudice, that argument fails because Plaintiffs would have had to raise the claims for either of those two consequences to obtain (i.e., a court cannot reach the merits of claims that are not presented to it). To the extent Plaintiffs are arguing that the underlying *action* must be adjudicated on the merits to waive compulsory counterclaims, that argument has been foreclosed by the D.C. Court of Appeals. In *District of Columbia v. Morris*, the plaintiff asserted a claim that admittedly should have been raised as a compulsory counterclaim in a previous proceeding, but argued that Rule 13(a) only bars the counterclaim "when the judgment in the first suit was on the merits." 367 A.2d 571, 572 (D.C. 1976). The court rejected that argument and held that the compulsory counterclaim inquiry does not focus on the outcome of the first proceeding, but rather on whether the defendant had the opportunity or necessity to file a

responsive pleading. *Id.* at 573. In the present case, Plaintiffs clearly had the opportunity and necessity to file a responsive pleading–and did, in fact, file a responsive pleading–but chose to assert only some of their claims. *See* Def.'s Mot., Ex. 4 (9/27/07 Answer). As in *Morris*, the effect of Plaintiffs' decision to raise only some of their claims arising out of the loan transaction with Fremont results in their additional claims being "forever barred." *Morris*, 367 A.2d at 573.

Plaintiffs' second argument is based on Fremont's agreement to stay the enforcement of its judgment for possession pending resolution of the instant Motion. According to Plaintiffs, "[a]ll parties agreed and have consented in this Court that the matters and proceedings at the Superior Court, both [the] Civil [D]ivision and Landlord & Tenant Branch[,] will be stayed until a decision upon the merits have [sic] been adjudicated." Pls.' Opp'n at 8. From this premise, Plaintiffs assert that "the core issues and clams [sic] will evade both issue and claim preclusion." *Id.* Although Plaintiffs are correct that Fremont agreed to request a temporary stay in the enforcement of its judgment for possession pending resolution of the instant Motion, *see* [4] Joint Status Report at 1, the stay does not change the procedural history of the Superior Court action or somehow resurrect compulsory counterclaims that were never asserted in the first instance.[7] Accordingly, the Court shall dismiss Counts I, IV, V, and VI against Fremont because

---

[7] Although not entirely clear, Plaintiffs may also be suggesting that the compulsory counterclaim rule does not apply in D.C. Superior Court when a case originates in the Landlord & Tenant Branch. *See* Pls.' Opp'n at 8 ("[t]he 'plea of title' in effect, changes the defendant to a plaintiff in the Superior Court Civil Division where effectively, the counter-claim rule is ineffectual"). Plaintiffs cite no authority for this argument, and it is directly controverted by the statement, "the Superior Court Rules of Civil Procedure are applicable hereafter," that was included in the Notice sent to Plaintiffs by the Civil Actions Division indicating that their case was transferred from the Landlord & Tenant Branch. *See* Def.'s Mot., Ex. 5 (10/16/07 Certification Notice). That Notice also explained that answers to claims must be submitted "inclusive of any counterclaims or crossclaims that might be pending." *Id.* Thus, to the extent Plaintiffs are suggesting that they avoided the requirements of Rule 13(a) based on where their

they were compulsory counterclaims that Plaintiffs failed to raise in the Parties' initial Superior Court proceedings.[8]

Even if Plaintiffs' additional statutory claims were not barred as compulsory counterclaims, the Court would nevertheless have to dismiss these claims as untimely. Claims for monetary damages under the TILA and RESPA are each subject to a one-year statute of limitations period. *See* 15 U.S.C. § 1640(e) ("[a]ny action under this section may be brought . . . within one year from the date of the occurrence of the violation"); 12 U.S.C. § 2614 ("[a]ny action pursuant to [the applicable section] may be brought . . . within . . . 1 year . . ."). The right to rescind a transaction under TILA expires after the earlier of three years or the sale of the property. *See* 15 U.S.C. § 1635(f) ("[a]n obligor's right of rescission shall expire three years after the date of the transaction or upon the sale of the property, whichever occurs first . . ."). In this case, Fremont's loan transaction occurred in September 2005, Compl. ¶ 20, and the subject property was sold on July 9, 2007, *see* Def.'s Mot. at 3 n.2 & Ex. 1 (7/9/07 Deed of Trust). Because this lawsuit was filed on April 8, 2008, Plaintiffs' damages claims under TILA and RESPA are untimely by more than 18 months, and Plaintiffs' rescission claims are untimely by

---

case originated, that argument lacks merit.

[8] Fremont argues that Edna Robinson waived *all* of her claims because the Answer submitted in the Superior Court eviction proceedings stated that it was filed on behalf of Joanne Blue, without reference to Edna Robinson. *See* Def.'s Mot. at 5 & Ex. 4 at 1 (9/27/07 Answer). The Court notes that the Answer refers in various places to "Plaintiffs," and that the eviction proceedings indisputably involved both Joanne Blue and Edna Robinson. Because neither party has attached any other submissions from the Superior Court proceedings, the Court cannot make a determination as to whether the omission of Edna Robinson's name in the Answer was simply inadvertent or whether Ms. Robinson failed to take any steps with respect to answering Fremont's Complaint. Without additional facts, the Court cannot, at this time, dismiss Edna Robinson's claims against Fremont on this basis.

more than 8 months.

Plaintiffs raise two arguments to avoid the statute of limitations bar but neither is meritorious.  Plaintiffs first argue that their damages claims are timely because the statute of limitations periods for damages and rescission claims may be aggregated (to equal four years) when a defendant fails "to provide the required disclosure [under TILA]."  Pls.' Opp'n at 12.  That argument is puzzling given the express language of the statute that specifies a one-year limitations period for damages actions, *see* 16 U.S.C. § 1640(e), and given the Supreme Court's holding that section 1635(f) expressly limits the duration of the right to assert a rescission claim regardless of when the plaintiff could have or should have discovered any injury.  *See Hancock v. HomeEq Servicing Corp.*, 2007 U.S. Dist. LEXIS 31051 at *39 n.11 (D.D.C. Apr. 27, 2007) (citing Beach *v. Ocwen Federal Bank*, 523 U.S. 410, 417 (1998)), *aff'd*, 2008 U.S. App. LEXIS 11053 (D.C. Cir. May 23, 2008).  Plaintiffs' citation to *Ralls v. Bank of New York* for support is entirely unavailing.  230 B.R. 508 (Bankr. E.D. Pa. 1999).  In that case, the bankruptcy court explained that a damages action based on a party's failure to rescind a contract in response to a valid demand for the same could be filed within one year of the attempted rescission.  *Id.* at 513.  In the present case, Plaintiffs are seeking damages against Fremont based on its loan transaction and the failure of Fremont to provide certain disclosures, *see* Compl. ¶¶ 63-83, not based on a valid request for rescission.  Accordingly, Plaintiffs damages claims are subject to a one-year limitations period following the date of the transaction with Fremont.  *See Lawson v. Nationwide Mortgage Corp.*, 628 F. Supp. 804, 807 (D.D.C. 1986) ("[i]n this circuit, violation of TILA occurs no later than the date of settlement of any loan for which required disclosures have not been made").

Plaintiffs also argue that the sale of the property could not have terminated Plaintiffs' rescission claims because "Fremont was the lienholder of the fraudulently procured loan" and is thus "precluded from being a 'bonafide third party purchaser for value.'"[9] Pls.' Opp'n at 12. This argument further elucidates why the compulsory counterclaim rule prevents Plaintiffs from now raising this claim. The D.C. Superior Court has already entered a non-redeemable judgment for possession in favor of Fremont, *see* Def.'s Mot., Ex. 2 at 1 (2/13/08 Order), and Plaintiffs cannot attack that decision by now asserting this claim – regardless of whether Fremont was both a lienholder and the purchaser of the property. *See, e.g.*, *Henderson*, 439 A.2d at 485 (holding that the plaintiffs could not maintain a fraud action attacking the validity of a property sale in a proceeding subsequent to the foreclosure action, even though the seller was both a lienholder and the purchaser of the property at the foreclosure sale). Accordingly, the Court shall also dismiss Counts IV, V, and VI against Fremont as untimely.

    C.    *Counts II, III, VII, VIII*

Two of Plaintiffs' four remaining claims shall be dismissed against Fremont at this stage because, as Plaintiffs concede, they are inapplicable to Fremont. The District of Columbia Mortgage Lender and Broker Act (Count VII) exempts from its provisions any bank that is "incorporated or chartered under the laws of . . . any state or territory of the United States," D.C. Code § 26-1102(1), and the District of Columbia Home Loan Protection Act (Count VIII) exempts any bank that is "regulated and supervised by a supervising federal agency," D.C. Code § 26-1151.02(a). Fremont's Motion explains that it is a chartered bank under the laws of state of

---

    [9] For this reason, Plaintiffs ask the Court to place a constructive trust on the property in favor of Plaintiffs. *See* Pls.' Opp'n at 12-13.

California and that it is a Federal Deposit Insurance Corporation ("FDIC") regulated entity. *See* Def.'s Mot. at 11-13. For these reasons, Plaintiffs concede that a "clear reading of the statutes clearly indicate[s] [that] the defendant Fremont cannot be held directly liable for violating [these statutes]."[10] Pls.' Opp'n at 14.

Despite Fremont's exemption from these statutes, Plaintiffs argue that Fremont may be held *indirectly* liable if "it is held liable for Civil Conspiracy with the defendants who have been determined to be liable for the violations [under these statutes]." *Id.* As support, Plaintiffs cite *Hancock v. HomeEq Servicing*, Civ. A. No. 05-307, 2007 U.S. Dist. LEXIS 31051 (D.D.C. Apr. 27, 2007), *aff'd*, 2008 U.S. App. LEXIS 11053 (D.C. Cir. May 23, 2008), for the proposition that "D.C. lending laws may be brought against [] 'exempt' parties 'derivatively.'" Pls.' Opp'n at 14. As an initial matter, the Court notes that the *Hancock* court did *not* issue the rulings that Plaintiffs attribute to it. In that case, the plaintiffs sought to hold liable various assignees of a lender under claims that included the Mortgage Lender and Broker Act. *See* 2007 U.S. Dist. LEXIS 31051 at *37. Contrary to Plaintiffs arguments in this case, the *Hancock* court never reached the issue of whether the lender could be held liable under that statute because the plaintiffs' claims were deemed untimely. *Id.* ("the statute of limitations has expired with regard

---

[10] Fremont attaches to its Motion two documents supporting its argument that it is chartered under the law of the State of California and regulated by the FDIC. *See* Def.'s Mot., Ex. 6 (10/11/04 Certificate of Authority) (certifying that Fremont "has complied with all provisions of the Financial code governing organization of industrial banks and is authorized to transact industrial banking business"); *id.*, Ex. 7 (10/11/04 FDIC Certificate) (certifying that "deposits of each depositor in Fremont . . . are insured to the maximum amount provided by the Federal Deposit Insurance Act"). Fremont maintains that the Court may consider these documents without converting its Motion to one for Summary Judgment because they are "public records for which the court may take judicial notice." *Id.* at 12. While Fremont is correct, the Court need not consider the actual documents because Plaintiffs concede the point as reflected in the text above.

to . . . these claims"). In any event, Plaintiffs' argument fails in this case because the Court has already dismissed the civil conspiracy claim against Fremont. *See* section III.B., *supra* (dismissing the civil conspiracy claim because Plaintiffs failed to raise it as a compulsory counterclaim in the Parties' initial Superior Court proceedings). Accordingly, the Court shall dismiss Counts VII and VIII against Fremont.

Plaintiffs' remaining two claims allege violations of the District of Columbia Consumer Protection Procedures Act (Count II) and Common Law Fraud (Count III). Count II alleges that one or more unidentified Defendants "omitted the material fact that it would charge substantially higher points and hidden fees, specifically, the miscellaneous fees and 'phantom' deposits." Compl. ¶ 50. Plaintiffs also allege that an unspecified Defendant "knew or should have known that [an unidentified] plaintiff would have difficulty repaying the loan and was, therefore, subjecting herself to the likelihood of foreclosure." *Id.* ¶ 48. As to Count III, Plaintiffs allege that Fremont was a fiduciary of the Plaintiffs, *id.* ¶ 57, and that

> defendants defrauded the plaintiff by failing to disclose information that it had a duty to disclose, in particular, the financial disadvantages to her of obtaining a mortgage loan based on an excessively and fraudulently high stated principle [sic] price when compared to available housing with comparable work to be done and when compared to her limited financial means, and the financial disadvantages of executing four nearly simultaneous real estate closings on her home.[11]

*Id.*

Fremont argues that both of these claims sound in fraud, and that Plaintiffs have failed to plead these claims with the specificity required by Federal Rule of Civil Procedure 9(b). *See* Def.'s Mot. at 6-9. Fremont also argues that Plaintiffs have interspersed the words "Plaintiff(s)"

---

[11] Even though this allegation references four real estate closings, Plaintiffs only allege facts in their Complaint concerning two real estate transactions. *See* Compl. ¶¶ 15-27.

and "Defendant(s)" throughout their Complaint, making it impossible to ascertain the persons or entities to which they are referring. *Id.* at 6. In response, Plaintiffs have asked the Court for leave to file an Amended Complaint, alluding to the Federal Rules of Civil Procedure which authorizes leave to be "freely give[n]." Fed. R. Civ. P. 15(a)(2). Fremont indicates in Reply that it does *not* oppose Plaintiffs' request to amend claims II and III. *See* Def.'s Reply at 8.

The Court notes that Plaintiffs' request for leave violates Local Civil Rule 15.1, which requires a motion for leave to amend to be "accompanied by an original of the proposed pleading as amended." LCvR 15.1. By failing to attach an amended pleading, Plaintiffs have deprived the Court of any notion of what specific facts Plaintiffs will identify in an amended Complaint. *See Simpson v. Socialist People's Libyan Arab Jamahiriya*, 259 F. Supp. 2d 80, 85 (D.D.C. 2008) (finding that plaintiff's failure to comply with Local Civil Rule 15.1 "denied the court [of] any notion of what law [the plaintiff] proposes to identify in an amendment" and "reveals a lack of preparation and conscientiousness"). Nevertheless, because Fremont does not oppose Plaintiffs' request for leave to amend Counts II and III, and because no party has suggested that the request has been made for purposes of delay or in bad faith, the Court shall allow Plaintiffs the opportunity to file an Amended Complaint, subject to the following instructions.

First, Plaintiffs' Amended Complaint should identify the actual names of the persons or entities to which they are referring, instead of using the terms "Plaintiff(s)" or "Defendant(s)." Second, although Plaintiffs may amend any portion of their Complaint they deem appropriate, only Counts II and III shall remain viable against Fremont in accordance with this Memorandum Opinion. Third, the Court shall set a date by which Plaintiffs' shall file their Amended Complaint. If Fremont decides, after reviewing the Amended Complaint, that filing a Motion to

Dismiss Counts II and III is appropriate, the Parties shall comply with the briefing schedule contained in the Order accompanying this Memorandum Opinion.  Finally, the Court notes that Count II of Plaintiffs' Complaint alleges multiple violations of the District of Columbia Consumer Protection Procedures Act and that Fremont's Motion to Dismiss fails to address each alleged violation.  If Fremont decides to file a Motion to Dismiss Count II of Plaintiffs' Amended Complaint and does not address all alleged violations, the Court shall assume that Fremont does not assert that any legal infirmities exist as to those alleged violations at this stage of the litigation.

## CONCLUSION

For the reasons set forth above, the Court shall grant-in-part and deny-without-prejudice-in-part Fremont's [5] Motion to Dismiss.  Counts I, IV, V, VI, VII, and VIII are dismissed against Fremont, and all claims asserted by Halbert and Rose Blue against Fremont are dismissed.  Fremont's Motion to Dismiss is denied without prejudice as to Counts II and III.  An appropriate Order accompanies this Memorandum Opinion.

Date: June 23, 2008

                                                           /s/
                                           COLLEEN KOLLAR-KOTELLY
                                           United States District Judge