UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOANNE BLUE, *et al.*, )<br>  )<br>         Plaintiffs, )<br>  )<br>    v.     )<br>  )<br>FREEMONT INVESTMENT AND )<br>LOAN, INC., *et al.*, )<br>  )<br>         Defendants. )<br>_____) | **Case No. 1:08-cv-00729-CKK** |

**REPLY MEMORANDUM**
**IN SUPPORT OF DEFENDANT EXECUTIVE TITLE AND ESCROW'S**
**MOTION TO DISMISS AMENDED COMPLAINT**

Defendant, Executive Title & Escrow, LLC ("Executive Title"), by its undersigned counsel, submits this reply memorandum of law in support of its motion to dismiss the Complaint, and state as follows:

**ARGUMENT**

**I.     The April 27, 2004 and September 29, 2005 Settlements are Two Separate Transactions.**

In opposition to Executive Title's motion to dismiss any claims arising from the April 27, 2004 closing, Plaintiffs argue that the April 24, 2004 closing and the September 29, 2005 closing "was in fact one fraudulent event." Opp. at 7. This argument cannot stand scrutiny. This contention is an obvious attempt to make an end run around the three year statute of limitations stemming from the closing conducted by Executive Title on April 27, 2004. The two closing, however, are in fact were two separate transactions, over a year apart, involving different parties, doing different things.

As an initial matter, it is important to note that Plaintiffs contend in this lawsuit that the basis of their damages stem from them having a loan that exceeded their means to

pay and for which they claim they never applied. *See e.g.,* Compl., ¶¶ 20, 24, 27. Executive Title is not a loan broker or lender. Rather, it conducted two separate closing involving different persons, which Plaintiffs have conceded they attended. The April 27, 2004 closing was where Plaintiffs Halbert, Rose and Joanne Blue conveyed their interest in the Property to Co-Defendant Carew. S*ee* April 27, 2004 HUD-1, incorporated herein and attached hereto as **Exhibit A**.[1] Thus, as the sellers, Plaintiffs Halbert, Rose and Joanne Blue were not the recipients of any alleged fraudulent high mortgage loan with regard to the April 27, 2004 closing conducted by Executive Title. Moreover, Plaintiffs have not alleged any wrongful conduct by Executive Title with respect to the April 27, 2004 transaction. Instead, they contend in their Complaint that all of their alleged damages stem from the loan Plaintiffs *Joanne Blue* and *Edna Robinson* received in September 2005. Accordingly, there is no alleged fraudulent conduct on the part of Executive Title with regard to the April 27, 2005 closing in the first instance, and there is no alleged fraudulent conduct by Executive Title with regard to the April 27, 2007 closing that caused the alleged damages Plaintiffs are claiming from the September 2005 loan in the second instance.

Further, the April 27, 2004 closing and the September 29, 2005 closing involved different parties. The April 27, 2004 closing involved Defendant Carew as a purchaser and Plaintiffs *Halbert, Rose and Joanne Blue* as the sellers, in contrast to the September 29, 2005 closing which involved Plaintiffs *Joanne Blue and Edna Robinson* as the purchasers and Defendant Carew as the seller. Thus, Plaintiff Edna Robinson cannot piggy-back on the April 27, 2004 closing in which she was not involved, and Plaintiffs

---

[1] Unexecuted version of April 27, 2004 HUD-1 is attached to the Complaint as exhibit 2.

2

Halbert, Rose and Joanne Blue cannot claim (and have not claimed in this lawsuit) ignorance of the occurrence of the April 27, 2004 closing in which they admit attending.

The law in the District of Columbia, as elsewhere, is well settled that one who signs a written document is bound by its terms whether he reads and understands it or not or whether he can read it or not. *See, Diamond Housing Corp. v. Lena Robinson*, 257 A.2d 492, 493 (D.C. 1969); *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. 1983) (holding that judgment "is appropriate when a contract is unambiguous since, absent such ambiguity, a written contract duly signed and executed speaks for itself and binds the parties. . . ."). Plaintiffs' contention that they were placed on ***inquiry notice*** in 2005 "once they began receiving notices of foreclosure," is specious. They were placed on *actual notice* that the April 27, 2004 closing was for the sale of their property when they: (1) attended the settlement on April 27, 2004 with the buyer, (2) executed a HUD-1 of the same date as sellers certifying its correctness, and then (3) executed a Deed of the same date granting in fee simple the property to Defendant Carew. S*ee* **Exhibit A**; Deed dated April 27, 2004, incorporated herein and attached hereto as **Exhibit B**.[2] As set forth *infra*, there is no allegation that these documents were altered or that Plaintiffs signatures were forged onto them. Thus, Plaintiffs contentions of inquiry notice are belied by the record. Accordingly, pursuant to D.C. Code § 12-301, any claims arising from the April 27th closing, assuming they were otherwise viable, are approximately one year too late.

## II.  Plaintiffs Improperly Rely on Factual Matters Not Pled in Their Complaint

In response to Executive Title's motion to dismiss, Plaintiffs argue in their opposition facts that are not pled anywhere in the Amended Complaint. Plaintiffs do this

---

[2] The April 27, 2004 Deed is also attached to the Complaint as exhibit 1.

because *inter alia*, they are aware that their Complaint is replete with bald assertions of conclusory allegations. Instead, the Complaint fails to allege specific facts to support a conspiracy on the part of Executive Title with anyone and the Complaint fails to plead "with particularity" what Executive Title is alleged to have done fraudulently as mandated by Fed.R.Civ.P. 9(b).

For example to list just a few newly minted facts, Plaintiffs for the first time in their Opposition spout the following untrue allegations which presumably are aimed at Executive Title:

- "At the closing, the plaintiffs were not informed as to the nature of the transaction. The plaintiffs were led to believe it was a refinancing, but were actually signing documents to orchestrate the sale of their property to Brenda Carew." Opp. at 3.
- "Upon signing the deed, the plaintiff's [sic] were instructed not to worry about the dead, 'that it was necessary in order for them to receive a loan.'" *Id.*
- "Executive Title . . . fraudulently released lender funds held in escrow to defendants Town & Country, Dennis Bishop and Brenda Carew." Opp. at 4.
- "When defendant Executive Title . . . received the bank wire transfer back from defendant Fremont Investment & Loan, defendant Executive Title . . . would complete the transaction, falsely certifying to the lender on the settlement statement that the down payment came from the plaintiffs Joan Blue and Edna Robinson." *Id.*
- "On the Settlement statement, defendant Executive Title . . . also fraudulently accounted for disbursements to the defendants Town and Country, by falsely listing the expense as a phony down payment, or as a "credit" due to the defendant's [sic]." *Id.*
- "The defendant Executive Title . . . falsified the settlement statements to conceal its wrongful and fraudulent release of the lender escrow funds." *Id.*

These new statements are a last ditched attempt to support Plaintiffs' conclusory claims and stave off dismissal. The Court should not consider any of the newly alleged facts improperly raised for the first time in Plaintiffs' Opposition. *See Henthorn v. Dept. of Navy*, 29 F.3d 682, 688 (D.C.Cir. 1994).

### III. Even If Plaintiffs' Civil Conspiracy Claim was Not a Stand-A-Lone Claim, it Should be Dismissed.

Even assuming *arguendo*, that a cause of action for civil conspiracy did exist under the circumstances of this case, it would be duplicative of Counts 2 and 4 and thus, should in any event be dismissed. This is because "conspiracy is not an independent tort but only 'a means for establishing vicarious liability for [an] underlying tort.'" *Paul v. Howard University*, 754 A.2d 297, 310 (D.C. 2000) *citing Griva v. Davison*, 637 A.2d 830, 848 (D.C.1994); *see also Elliott v. Healthcare Corp.,* 629 A.2d 6, 9 (D.C.1993). Thus, because Plaintiffs contend that their conspiracy claims are based on their claims against Executive Title for violation of the DCCPPA and fraud alleged in Counts 2 and 4, Plaintiffs' conspiracy claim is redundant. Accordingly, this Court need only consider whether the allegations of the underlying claims alleged in Counts 2 and 4 are sufficient. *See Paul v. Howard University*, 754 A.2d at 310.

Moreover, Plaintiffs' contention in their Opposition that the Complaint provides facts in support of their civil conspiracy claim that are beyond mere bald assertions of conclusory allegations is itself not supported. Although Plaintiffs represent in their Opposition that Paragraphs 15 through 36 of the Complaint provide "facts identifying the relationship between the defendants," a review of the Complaint confirms that Executive Title does not even appear either implicitly or expressly until paragraphs 29 and 33. Even then, Executive Title is only mentioned in the most conclusory fashion. Accordingly, even if Plaintiffs' claim for civil conspiracy existed in D.C. and even if it was not duplicative of Counts 2 and 4, it should nevertheless be dismissed because it fails

to set forth any facts beyond mere bald assertions that there existed an agreement between Executive Title and others to tortiously injure the Plaintiffs.

### IV. Counts Two Fails to State a Claim Against Executive Title.

As an initial matter, Plaintiffs Halbert and Rose Blue offer no response to Executive Title's argument that they have no standing to assert any allegations regarding the September 29, 2005 closing conducted by Executive Title.  As alleged in the Complaint, Plaintiffs Halbert and Rose Blue were not a title holder to the property at the time of the September 29, 2005 closing.  Moreover, they were not a party to the September 29, 2005 closing.  See September 29, 2005 HUD-1 is attached hereto and incorporated as **Exhibit C.**  Thus, Count 2 cannot state a claim against Executive Title upon which Plaintiffs Halbert and Rose Blue can be granted relief.

With respect to Plaintiffs Joanne Blue and Edna Robinson, Count Two lacks any particularity with regard to the allegedly fraudulent conduct by Executive Title as the settlement company.  The sole reference to Executive Title is in paragraph 41, wherein Plaintiffs restate the same conclusory and nebulous statement made in Count One that allegedly Executive Title facilitated fraud (which is later conclusorily alleged in Count 4) by inserting erroneous dollar amounts (that Executive Title would have received from Plaintiffs) into the HUD-1.  These formulaic recitations, however, are insufficient to state a claim against Executive Title for misrepresentation under the DCCPPA.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (plaintiffs may not rely upon a "formulaic recitation of the elements of a case").

Plaintiffs concur in their Opposition that with the exception of the taxes and D.C. recordation fees set by the government and the charges for Executive Title's services,

6

Executive Title as the settlement agent obtains the figures inserted in the HUD-1 from the parties to the transaction. Opp. at 13. Plaintiffs, however, display a fundamental misunderstanding of the settlement process by arguing that Executive Title "engaged in fraudulent conduct by certifying that the 'deposit' funds were in fact disbursed." Opp. at 13. To the contrary, Executive Title did not and does not certify anything with regard to the settlement. Rather it was Plaintiffs Joanne Blue and Edna Robinson who certified that they "carefully reviewed the HUD-1 Settlement Statement" to assure that to the best of their knowledge the information they provided Executive Title was true and to "agree to further adjustments in the event of errors or omissions." *See* **Exhibit C.** Further, they agreed to "indemnify and hold [Executive Title] harmless against such error or omissions." *Id*.

The U.S. Department of Housing and Urban Development requires this certification for instances such as this—where persons later contend that it is the closing agent's responsibility to assure that information is true and correct. Such a contention is illogical because as Plaintiffs acknowledge in their Opposition, Executive Title gets the information regarding whether or not there was a deposit paid by the Plaintiffs from them. Deposits made between the buyer and seller are not money from the lender that is sent to the settlement company to hold in escrow and disburse to the appropriate parties. Only the seller or buyer would know whether a deposit was paid by one and received by the other, as that transaction is conducted before and outside of a closing. Executive Title simply relays the information in connection with such deposits as certified by the parties. As stated, there are no allegations that Plaintiffs' names were forged onto these certifications.

Thus, the Complaint wholly fails to allege how these alleged errors of which Plaintiffs agreed to advise Executive Title or any other alleged conduct on behalf of Executive Title could mislead Plaintiffs to enter into a loan with "excessive loan fees, interest and costs" as Plaintiffs allege in Count Two. Accordingly: (1) Count Two fails to provide fair notice to Executive Title of any misrepresentation that led to Plaintiffs alleged damages and (2) Plaintiffs waived any claims against Executive Title for errors or omissions in the HUD-1.

**V. Count Four Fails to Set Forth any Reliance by Plaintiffs on the Actions of Executive Title**.

In response to Executive Title's arguments in its motion to dismiss that Count 4 of the Complaint fails to mention Executive Title's name anywhere, Plaintiffs attempt to add new facts. Specifically, Plaintiffs attempt to add that Executive Title made a false representation by certifying the $43,000.00 deposited referenced on the April 27, 2004 HUD-1. *See* Opp. at 14. First, as set forth *supra*, claims originating from the April 27, 2004 HUD-1 are barred by limitations. More importantly, however, a review of Paragraph 18 of the Complaint where Plaintiffs contend the allegation of misrepresentation exists reveals that there is in fact no such allegation of misrepresentation. Thus, Plaintiffs have improperly attempted in their Opposition to recast the allegations actually set forth in their Complaint. *See Henthorn v. Dept. of Navy*, 29 F.3d at 688.

Plaintiffs contend in their Opposition that reliance is properly set forth in Paragraph 42 of the Complaint. Paragraph 42 of the Complaint, however, baldly asserts:

> [t]o the extent, if any, that the plaintiff was able to, she justifiably relied in fact and in law on the misrepresentation of the defendants and on the fraudulent disclosures and failures to disclose of the defendants, and as the

> result of the defendants' fraudulent disclosures and failures to disclose, the plaintiff was deprived of the good faith services of her lender and consequently was damaged in receiving loans that she did not need and on less favorable terms than she otherwise could have obtained.

Compl., ¶ 42. Plaintiffs' muddled and conclusory statement in Paragraph 42 of the Complaint lacks any particularity and is insufficient to support reliance by Plaintiffs on anything Executive Title did as required by Fed.R.Civ.P. 9(b). There are no allegations about how, what or when Executive Title, as the settlement company, could have made any misrepresentations about the loan or financing of the property which Plaintiffs could have relied upon. Rather, as alleged in the Complaint, it is beyond dispute that Executive Title was the settlement company, not a broker or financing company. These anonymous and conclusory allegations are insufficient to survive a motion to dismiss. *Ellipso, Inc. v. Mann*, 460 F.Supp.2d 99, 105 (D.D.C. 2006) (*citing Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1278 (D.C.Cir. 1994); *See* 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1300.

      Finally, any reliance that could be derived from the bald allegations of the Complaint is belied by the very documents attached to the Complaint. Namely, the April 27, 2004 Deed and the September 29, 2005 HUD-1, wherein Plaintiffs acknowledge in the first instance their sale of the property in fee to Defendant Carew and certified the correctness of the figures provided to Executive Title in the second instance. *See* **Exhibits B** and **C**. As stated, Plaintiff also provided Executive Title with a waiver of claims in connection with error on the HUD-1. Thus, Plaintiffs could not have relied upon errors in the HUD-1 that they certified to be accurate and further agreed to correct if later found not to be inaccurate. *Id*.

**CONCLUSION**

For all the foregoing reasons, Defendant Executive Title's Motion to Dismiss should be granted.

Respectfully Submitted,


_____/s/_____
David E. Ralph (461593)
Law Offices of David E. Ralph, LLC
2423 Maryland Ave.
Suite 100
Baltimore, Maryland  21218
 (410) 366-1500
 (410) 366-1501

*Attorneys for Defendant Executive Title*

**A. Settlement Statement**

B. Type of Loan

U.S. Department of Housing and Urban Development
OMB No. 2502-0265 REV. HUD-1 (3/86)

| 1. ☐FHA | 2. ☐FmHA | 3. ☐Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|---|---|
| 4. ☐VA | 5. ☐Conv. Ins. | | 04-435RTL | 0001498691 | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for information purposes and are not included in the totals. WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

TitleExpress Settlement System
Printed 04/28/2004 at 10:47 R1

D. NAME OF BORROWER: Brenda D. Carew
ADDRESS:

E. NAME OF SELLER: Halbert T. Blue and Rose M. Blue
Joanne Blue
ADDRESS: 1001 F Street, NE, Washington, DC 20002

F. NAME OF LENDER: New Century Mortgage Corporation
ADDRESS: 18400 Von Karman, Ste 1000, Irvine, CA 92612

G. PROPERTY ADDRESS: 1001 F Street, NE, Washington, DC 20002

H. SETTLEMENT AGENT: Executive Title and Escrow L.L.C., Telephone: 301-341-6444 Fax: 301-341-1238
PLACE OF SETTLEMENT: 9500 Arena Drive, Suite 480, Largo, MD 20774

I. SETTLEMENT DATE: 04/27/2004

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Contract sales price | 430,000.00 | 401. Contract sales price | 430,000.0 |
| 102. Personal Property | | 402. Personal Property | |
| 103.            1400) | 20,835.80 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 450,835.80 | 420. GROSS AMOUNT DUE TO SELLER | 430,000. |
| 200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. Deposit or earnest money | 43,000.00 | 501. Excess Deposit (see instructions) | 43,000. |
| 202. Principal amount of new loans | 387,000.00 | 502. Settlement charges to seller (line 1400) | 7,075. |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff:30910806 | 315,485. |
| | | Ocwen Federal Bank | |
| 205. | | 505. | |
| 206. | | 506. Release Fee | 225. |
| | | Executive Title and Escrow L.L | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes 04/01/04 to 04/27/04 | 107.47 | 510. City/town taxes 04/01/04 to 04/27/04 | 107. |
| 213. | | 513. Water Escrow | 450. |
| 214. SELLER CREDIT | 17,500.00 | 514. SELLER CREDIT | 17,500. |
| 215. | | 515. MISC/BILL | 27,000. |
| 216. | | 516. MISC/BILL | 4,000. |
| 217. | | 517. ESCROW | 8,000. |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | 447,607.47 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | 422,842 |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | 450,835.80 | 601. Gross amount due to seller (line 420) | 430,000 |
| 302. Less amounts paid by/for borrower (line 220) | 447,607.47 | 602. Less reduction amount due seller (line 520) | 422,842 |
| 303. CASH FROM BORROWER | 3,228.33 | 603. CASH TO SELLER | 7,157 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on line 401 above constitutes the Gross Proceeds of this transaction.

SELLER INSTRUCTIONS: If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide the settlement agent (Fed. Tax ID No: _____) with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

TIN: 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, 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     SELLER(S) SIGNATURE(S): *Joanne Blue, Halbert T Blue*

SELLER(S) NEW MAILING ADDRESS: *1001 F. Street NE Washington DC 20002*

SELLER(S) PHONE NUMBERS: *202 543 3580* (H) _____ (W)

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
**SETTLEMENT STATEMENT**
REV. HUD-1 (3/86)

File Number: 04-4...
TitleExpress Settlement System Printed 04/28/2004 at 10:47 PM

## L. SETTLEMENT CHARGES

| | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $430,000.00 = | | |
| Division of commission (line 700) as follows: | | |
| 701. $ to | | |
| 702. $ to | | |
| 703. Commission paid at Settlement | | |
| 704. Administrative Fee | | |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | |
| 801. Loan Origination Fee  2.000 % Town and Country Mortgage | 7,740.00 | |
| 802. Loan Discount  % | | |
| 803. Appraisal Fee  to Town and Country Mortgage | 350.00 | |
| 804. Credit Report  to Town and Country Mortgage | 9.00 | |
| 805. UNDERWRITING FEE  to New Century Mortgage Corporation | 350.00 | |
| 806. DOCUMENT FEE  to New C... Mortgage Corporation | 359.00 | |
| 807. TAX SERVICE FEE  to New C... Mortgage Corporation | 78.00 | |
| 808. FLOOD CERTIFICATION  to New ... Mortgage Corporation | 11.20 | |
| 809. PROCESSING FEE  to Town and Country Mortgage | 600.00 | |
| 810. | | |
| 811. | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | |
| 901. Interest From 04/27/2004 to 05/01/2004 @$ 63.6200 /day  4 Days | 254.48 | |
| 902. Mortgage Insurance Premium for  to | | |
| 903. Hazard Insurance Premium for  to STATE FARM  (P.O.C.) 1,288.00 Buyer | | |
| 904. | | |
| 905. | | |
| **1000. RESERVES DEPOSITED WITH LENDER FOR** | | |
| 1001. Hazard Insurance  2 mo. @ $ 101.50 /mo | 203.00 | |
| 1002. Mortgage Insurance  mo. @ $ /mo | | |
| 1003. City Property Taxes  2 mo. @ $ 209.06 /mo | 418.12 | |
| 1004. County Property Taxes  mo. @ $ /mo | | |
| 1005. Annual Assessments  mo. @ $ /mo | | |
| 1009. Aggregate Analysis Adjustment | 0.00 | 0. |
| **1100. TITLE CHARGES** | | |
| 1101. Settlement or closing fee  to Executive Title and Escrow L.L.C. | 175.00 | 250. |
| 1102. Abstract or title search  to LKW Title and Abstract Service, LLC | 255.00 | |
| 1103. Title examination  to Executive Title and Escrow L.L.C. | 325.00 | |
| 1104. Title Insurance binder  to ...e Title and Escrow L.L.C. | 75.00 | |
| 1105. Document Preparation  ... e Title and Escrow L.L.C. | | 150 |
| 1106. Notary Fees | | |
| 1107. Attorney's fees  to Lawrence O. Elliott, Jr. Esq. | 100.00 | |
| (includes above items No: ) | | |
| 1108. Title Insurance  to Old Republic National Title Insurance Co. | 2,378.00 | |
| (includes above items No: ) | | |
| 1109. Lender's Policy  387,000.00 - 1,522.96 | | |
| 1110. Owner's Policy  430,000.00 - 855.04 | | |
| 1111. Judgment Search  to Property Insight | 25.00 | |
| 1112. | | |
| 1113. Courier/Overnight  to Executive Title and Escrow L.L.C. | 65.00 | 65 |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | |
| 1201. Recording Fees Deed $ 40.00 ; Mortgage $ 250.00 ; Release $ 160.00 | 290.00 | 160 |
| 1202. City Transfer Tax  Deed $6,450.00 ; Mortgage $ | 3,225.00 | 3,225 |
| 1203. City Recordation Tax  Deed $6,450.00 ; Mortgage $ | 3,225.00 | 3,225 |
| 1204. Construction Tax  Deed $ ; Mortgage $ | | |
| 1205. | | |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | |
| 1301. Survey  to Duley and Associates, Inc. | 275.00 | |
| 1302. Pest Inspection | | |
| 1303. CLEAL LIEN  to DC TREASURER | 50.00 | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| **1400. TOTAL SETTLEMENT CHARGES**  (enter on lines 103, Section J and 502, Section K) | 20,835.80 | 7,07 |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement. I agree to further adjustments in the event of errors or omissions and I hold the harmless Settlement Agent against such error or omissions.

Brenda D. Carew
161782272

Halbert T. Blue
Rose M. Blue
Joanna Blue

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18: U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

By: _____  4/22/04

File No. **04-435RTL**
DEED-SHORT FORM D.C.

Doc# 2004072447

**This Deed**, made this 27th day of **April, 2004**, by and between Halbert T. Blue, Rose M. Blue and Joanne Blue, parties of the first part, and Brenda D. Carew, party of the second part.

WITNESSETH, that in consideration of the sum of FOUR HUNDRED THIRTY THOUSAND AND 00/100 DOLLARS ($430,000.00), the parties of the first part do hereby grant unto the party of the second part, in fee simple, as sole owner, all that piece or parcel of land, together with the improvements, rights, privileges and appurtenances to the same belonging, situate in the District of Columbia, described as follows, to wit:

LOT 18 IN VINCENT W. KRAMER'S SUBDIVISION OF LOTS IN SQUARE 961 AS PER PLAT RECORDED IN THE OFFICE OF THE SURVEYOR FOR THE DISTRICT OF COLUMBIA IN LIBER 75 AT FOLIO 55 SUBJECT TO A PERPETUAL RIGHT OF WAY OVER THE REAR 12 FEET OF SAID LOT NUMBERED 18 FOR THE USE AND BENEFIT OF LOTS NUMBERED 19, 20 AND 21 IN SAID IN SAID SUBDIVISION.
PROPERTY ADDRESS: 1001 F STREET N.E WASHINGTON DC 20002
PROPERTY TAX ID NUMBER: SQUARE 0961 LOT 0018

AND the said parties of the first part covenant that they will warrant specially the property hereby conveyed; and that they will execute such further assurances of said land as may be requisite.

WITNESS the hands and seals the day and year first hereinbefore written.

IN PRESENCE OF:

_____  /s/ Halbert T. Blue _____ {SEAL}
                                Halbert T. Blue

_____  /s/ Rose M. Blue _____ {SEAL}
                                Rose M. Blue

_____  /s/ Joanne Blue _____ {SEAL}
                                Joanne Blue


DISTRICT OF COLUMBIA

I, Lawrence Elliott, a Notary Public, in and for the jurisdiction aforesaid, do hereby certify that Halbert T. Blue, Rose M. Blue and Joanne Blue, who are personally well known to me as the grantors in, and the persons who executed the foregoing and annexed deed, bearing the date of **April 27, 2004**, personally appeared before me in the said District and acknowledged the said deed to be their act and deed.

Given under my hand and seal this 27th day of April, 2004.

_____
Notary Public

My Commission Expires: _____

AFTER RECORDING MAIL TO:              GRANTEE ADDRESS:
**Executive Title and Escrow L.L.C.**
**9500 Arena Drive, Suite 480**
**Largo, MD 20774**

# A. Settlement Statement

U.S. Department of Housing and Urban Development
OMB No. 2502-0265 REV. HUD-1 (3/86)

**B. Type of Loan**

| 1. ☐ FHA | 2. ☐ FmHA | 3. ☐ Conv. Unins. | 6. File Number | 7. Loan Number | 8. Mortgage Insurance Case Number |
|---|---|---|---|---|---|
| 4. ☐ VA | 5. ☐ Conv. Ins. | | 05-860RTL | 921000278868 | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals. WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

TitleExpress Settlement System

| D. NAME OF BORROWER: | Joanne Blue and Edna Robinson |
|---|---|
| ADDRESS: | 1001 F Street NE, Washington, DC 20002 |
| E. NAME OF SELLER: | Brenda D. Carew |
| ADDRESS: | 1001 F Street NE, Washington, DC 20002 |
| F. NAME OF LENDER: | Fremont Investment & Loans |
| ADDRESS: | ISAOA and/or ATIMA, 1065 N. Pacificenter Drive, Anaheim, CA 92806 |
| G. PROPERTY ADDRESS: | 1001 F Street NE, Washington, DC 20002 |
| H. SETTLEMENT AGENT: | Executive Title and Escrow L.L.C., Telephone: 301-341-6444 Fax: 301-341-1238 |
| PLACE OF SETTLEMENT: | 9500 Arena Drive, Suite 480, Largo, MD 20774 |
| I. SETTLEMENT DATE: | 09/29/2005 |

| J. SUMMARY OF BORROWER'S TRANSACTION: | | K. SUMMARY OF SELLER'S TRANSACTION: | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER | | 400. GROSS AMOUNT DUE TO SELLER | |
| 101. Contract sales price | 555,000.00 | 401. Contract sales price | 555,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement charges to borrower (line 1400) | 29,232.57 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes  04/02/05 to 09/29/05 | 32.25 | 406. City/town taxes  04/02/05 to 09/29/05 | 32.25 |
| 109. Release Fee | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 584,264.82 | 420. GROSS AMOUNT DUE TO SELLER | 555,032.25 |
| 200. AMOUNTS PAID BY OR ON BEHALF OF BORROWER | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER | |
| 201. Deposit or earnest money | 55,500.00 | 501. Excess Deposit (see instructions) | 55,500.00 |
| 202. Principal amount of new loans | 444,000.00 | 502. Settlement charges to seller (line 1400) | 6,385.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff:0001498691  New Century Mortgage Corporati | 403,739.55 |
| 205. | | 505. | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 213. SELLER HED 2ND LOAN | 55,500.00 | 513. SELLER HED 2ND LOAN | 55,500.00 |
| 214. | | 514. WATER ESCROW | 350.00 |
| 215. | | 515. RELEASE FEE | 225.00 |
| 216. BROKER CREDIT | 5,000.00 | 516. | |
| 217. | | 517. | |
| 218. SELLER CONTRIBUTION | 24,264.82 | 518. SELLER CONTRIBUTION | 24,264.82 |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | 584,264.82 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | 545,964.37 |
| 300. CASH AT SETTLEMENT FROM OR TO BORROWER | | 600. CASH AT SETTLEMENT TO OR FROM SELLER | |
| 301. Gross amount due from borrower (line 120) | 584,264.82 | 601. Gross amount due to seller (line 420) | 555,032.25 |
| 302. Less amounts paid by/for borrower (line 220) | 584,264.82 | 602. Less reduction amount due seller (line 520) | 545,964.37 |
| 303. CASH FROM BORROWER | 0.00 | 603. CASH TO SELLER | 9,067.88 |

SUBSTITUTE FORM 1099 SELLER STATEMENT: The information contained herein is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. The Contract Sales Price described on line 401 above constitutes the Gross Proceeds of this transaction.

SELLER INSTRUCTIONS: If this real estate was your principal residence, file Form 2119, Sale or Exchange of Principal Residence, for any gain, with your income tax return; for other transactions, complete the applicable parts of Form 4797, Form 6252 and/or Schedule D (Form 1040).

You are required by law to provide the settlement agent (Fed. Tax ID No: _____ ) with your correct taxpayer identification number. If you do not provide your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

_____ / _____     SELLER(S) SIGNATURE(S) _____ / _____

SELLER(S) NEW MAILING ADDRESS: _____

SELLER(S) PHONE NUMBERS: _____ (H) _____ (W)

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
SETTLEMENT STATEMENT    REV HUD-1 (3/86)

File Number: 05-060
TitleExpress Settlement System

PAGE 2

| L. SETTLEMENT CHARGES | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COMMISSION based on price $555,000.00 = | | | | |
| Division of commission (line 700) as follows: | | | | |
| 701. $ | to | | | |
| 702. $ | to | | | |
| 703. Commission paid at Settlement | | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | | |
| 801. Loan Origination Fee | %Fremont Investment & Loans | | 489.00 | |
| 802. Loan Discount | % | | | |
| 803. Appraisal Fee | to Town and Country Mortgage | (P.O.C.) 350.00 Buyer | | |
| 804. Credit Report | to Town and Country Mortgage | | 20.00 | |
| 805. BROKER FEE | to Town and Country Mortgage | | 13,979.00 | |
| 806. UNDERWRITING FEE | to Fremont Investment & Loans | | 405.00 | |
| 807. TAX SERVICE FEE | to LANDAMERICA TAX AND FLOOD SERVICES | | 60.00 | |
| 808. FLOOD CERT FEE | to LANDAMERICA TAX AND FLOOD SERVICES | | 9.50 | |
| 809. PROCESSING FEE | to Town and Country Mortgage | | 600.00 | |
| 810. | | | | |
| 811. | | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | |
| 901. Interest From 09/29/2005 to 10/01/2005 @$ 76.6400 /day 2 Days | | | 153.28 | |
| 902. Mortgage Insurance Premium for | to | | | |
| 903. Hazard Insurance Premium for | to STATE FARM | | 1,201.00 | |
| 904. | | | | |
| 905. | | | | |
| 1000. RESERVES DEPOSITED WITH LENDER FOR | | | | |
| 1001. Hazard Insurance | 3 mo. @ $ | 100.09 /mo | 300.27 | |
| 1002. Mortgage Insurance | mo. @ $ | /mo | | |
| 1003. City Property Taxes | mo. @ $ | 392.48 /mo | | |
| 1004. County Property Taxes | 4 mo. @ $ | 392.47 /mo | 1,569.88 | |
| 1005. Annual Assessments | mo. @ $ | /mo | | |
| 1009. Aggregate Analysis Adjustment to Fremont Investment & Loans | | | -392.61 | 0.00 |
| 1100. TITLE CHARGES | | | | |
| 1101. Settlement or closing fee | to Executive Title and Escrow L.L.C. | | 175.00 | 175.00 |
| 1102. Abstract or title search | to TJ Abstracts | | 280.75 | |
| 1103. Title examination | to Executive Title and Escrow L.L.C. | | 570.00 | |
| 1104. Title insurance binder | to Executive Title and Escrow L.L.C. | | 75.00 | |
| 1105. Document Preparation | | | | |
| 1106. Notary Fees | | | | |
| 1107. Attorney's fees | to Lawrence O. Elliott, Jr. Esq. | | 100.00 | |
| (includes above items No: | | ) | | |
| 1108. Title Insurance | to Old Republic National Title Insurance Co. | | 2,982.50 | |
| (includes above items No: | | ) | | |
| 1109. Lender's Policy | 444,000.00 - 1,568.00 | | | |
| 1110. Owner's Policy | 555,000.00 - 1,414.50 | | | |
| 1111. Judgment Search | to Property Insight | | 25.00 | |
| 1112. | | | | |
| 1113. Courier/Overnight | to Executive Title and Escrow L.L.C. | | 65.00 | 65.00 |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | |
| 1201. Recording Fees Deed $ 40.00 ; Mortgage $ 250.00 ; Release $ | | | 250.00 | 40.00 |
| 1202. City Transfer Tax | Deed $6,105.00 ; Mortgage $ | | 3,052.50 | 3,052.50 |
| 1203. City Recordation Tax | Deed $6,105.00 ; Mortgage $ | | 3,052.50 | 3,052.50 |
| 1204. Construction Tax | Deed $ ; Mortgage $ | | | |
| 1205. | | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | | |
| 1301. Survey | to Duley and Associates, Inc. | | 210.00 | |
| 1302. Pest Inspection | | | | |
| 1303. | | | | |
| 1304. | | | | |
| 1305. | | | | |
| 1306. | | | | |
| 1307. | | | | |
| 1308. | | | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103, Section J and 502, Section K) | | | 29,232.57 | 6,385.00 |

HUD CERTIFICATION OF BUYER AND SELLER

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement. I agree to further adjustments in the event of errors or omissions and indemnify and hold harmless Settlement Agent against such error or omissions.

WARNING: IT IS A CRIME TO KNOWINGLY MAKE FALSE STATEMENTS TO THE UNITED STATES ON THIS OR ANY SIMILAR FORM. PENALTIES UPON CONVICTION CAN INCLUDE A FINE AND IMPRISONMENT. FOR DETAILS SEE TITLE 18: U.S. CODE SECTION 1001 AND SECTION 1010.

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

By: _____   DATE _____